(225 P.3d 1195)

No. 100,566

STATE OF KANSAS, *Appellee*, v. BRENT TYRELL ALEXANDER, *Appellant*.

Opinion filed February 26, 2010.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Brian R. Sherwood*, assistant county attorney, *John P. Wheeler Jr.*, county attorney, and *Steve Six*, attorney general, for appellee.

Before LEBEN, P.J., CAPLINGER and BUSER, JJ.

LEBEN, J.: Brent Tyrell Alexander claims that the State waived its right to send him to jail after he violated his felony probation because the State took 2 years to find and arrest him. Alexander is right that due-process considerations require that the State act without unreasonable delay in such cases, and he's also right that the State's attempts to find him fell short of perfection. But the State does not waive its rights to prosecute a probation violation merely because its efforts are imperfect so long as those efforts are reasonable. We agree with the district court here that the State

undertook reasonable efforts to find Alexander so that a hearing could be held regarding his alleged probation violations.

Alexander was convicted of felony aggravated assault and misdemeanor criminal restraint. The district court granted probation, but if Alexander failed at probation, his underlying sentence was 27 months in prison and another 180 days in county jail on the misdemeanor.

Alexander violated his probation within 3 months by using illegal drugs, failing to respond to a curfew check, and otherwise failing to report as directed. But the court gave him a second chance on probation.

Soon thereafter, Alexander asked that his probation supervision be transferred from Garden City to Liberal because he had nowhere to live in Finney County but could stay with his wife in Ulysses, where he could be supervised out of Liberal. According to Alexander's probation officer, Alexander was supposed to fill out paperwork regarding this potential transfer—and another request to transfer his probation to Arkansas—at an appointment on October 26, 2005, that Alexander missed. He missed another appointment 5 days later, and his probation officer didn't have Alexander's home address. When Alexander called on October 31 to report that he was sick, the probation officer directed that Alexander report and provide his residential address. Alexander did neither.

The State moved to revoke his probation, and a warrant for Alexander's arrest was issued on November 3. The probation officer had another phone conversation with Alexander on November 9; Alexander expressed displeasure about the progress of his request to transfer probation supervision out of Garden City. After that conversation, the probation officer found a voicemail message from Alexander that she considered threatening; a charge for misdemeanor disorderly conduct was lodged against Alexander, but officers couldn't locate him that day.

On November 11, officers called Alexander's mother in Arkansas; she had no useful information. On November 16, officers entered Alexander's name and warrant into a national computer database. The sheriff's office published his photo as a wanted person in the local Garden City newspaper. Based on information obtained

in a records check, an officer also called one of Alexander's friends but got no useful information. Later, on November 30, officers tried to execute the arrest warrant at his last known address; Alexander wasn't there. The probation officer had no better address. In December 2005, officers sent a copy of the warrant and Alexander's photo to the sheriff's office in Ulysses, although it doesn't appear that any attempt was made to contact Alexander's wife, who lived there.

In August and September 2006, officers received tips that Alexander was working in Arkansas. Sheriff's officers contacted law enforcement in Arkansas but got no help. In February 2007, officers got a tip that Alexander was working in Ulysses. They again contacted the sheriff's office there, but Alexander was no longer working at the specified employer by the time that employer was identified in August. Alexander was arrested in Arkansas in October 2007; he was then extradited to Kansas because of the outstanding warrant.

Alexander presented evidence at the evidentiary hearing in district court that law-enforcement personnel failed to arrest him on the outstanding warrant even though they had contact with him. A Ulysses detective testified that he investigated an alleged battery that Alexander had witnessed in Ulysses in April 2007. Although the detective normally checks for warrants in the national database that had Alexander's warrant listed in it, the detective didn't remember specifically running a warrant check on Alexander. Another officer who responded to a domestic-disturbance call, apparently at Alexander's residence, said that although he didn't check for warrants, another officer did.

Alexander moved to dismiss the probation violation, which the district court denied. Alexander is correct that due-process considerations require that the State act without unreasonable delay in issuing and executing an arrest warrant for a probation violation. *State v. Hall*, 287 Kan. 139, 144, 195 P.3d 220 (2008). The State waives its right to proceed if it unreasonably delays executing a warrant for the arrest of a probationer whose whereabouts are either known or discoverable with reasonable diligence. *State v. Myers*, 39 Kan. App. 2d 250, Syl. ¶ 5, 178 P.3d 74 (2008). In other

words, if the State could or should have known with reasonable effort where the defendant was located in order to arrest him, the State cannot unreasonably delay making that arrest.

We review independently, without any required deference, the district court's legal conclusion regarding whether a person's due-process rights have been violated. *Myers*, 39 Kan. App. 2d at 252-53. As to the facts, we ordinarily must accept the district court's factual findings. Here, Alexander has not provided a transcript of the district court's ruling, which apparently was announced at a hearing called for that purpose. As the appellant, Alexander has a duty to provide a record demonstrating error. See *State v. Paul*, 285 Kan. 658, 670, 175 P.3d 840 (2008). In the absence of a transcript or a request to the district court for additional findings, we will assume—to the extent the evidence supports it—that the district court made the factual findings necessary to support its conclusion that the State acted reasonably in attempting to execute the warrant for Alexander's arrest. See *State v. Gaither*, 283 Kan. 671, 686, 156 P.3d 602 (2007).

Under this standard, the State demonstrated that it took several steps toward locating Alexander and arresting him on the warrant:

- entering the warrant into the national computer system used by law enforcement;
- publishing Alexander's photo in the local newspaper and seeking help from the public;
- following up on each tip received regarding Alexander's whereabouts;
- calling Alexander's mother in Arkansas and locating and calling one of Alexander's friends regarding Alexander's whereabouts;
- attempting to execute the warrant at Alexander's last known address; and
- forwarding information about Alexander to the sheriff in Ulysses and in Arkansas.

These actions are more extensive than those taken in any of the published cases in which we have found the State's efforts to have been so unreasonable that the due-process rights of the defendant

were violated and that the State was deemed to have waived its right to proceed. In *Myers*, the defendant wasn't arrested for more than 2 years after the warrant was issued, and the State didn't show any attempt to serve the warrant during that time. In *State v. Bennett*, 36 Kan. App. 2d 381, 138 P.3d 1284, *rev. denied* 282 Kan. 792 (2006), the defendant wasn't arrested for 2 years after issuance of the warrant. The State's efforts were limited to trying once to serve the warrant, posting the defendant's photo once on a local television "felon of the day" program, and following up on only one tip of the two received during that time. In *State v. Haines*, 30 Kan. App. 2d 110, 39 P.3d 95, *rev. denied* 273 Kan. 1038 (2002), the defendant wasn't arrested for 16 years, and there was no evidence of any attempt to locate the defendant during that time other than sending letters to Haines' wife and mother; the letter to the mother was returned, and the State knew that Haines' wife had left him.

Alexander relies primarily upon *Haines* in support of his argument, but the investigation undertaken here was much more thorough than the one in *Haines*. In addition, the time between the warrant's issuance and Alexander's arrest was less than 2 years, not 16, and the State took periodic steps to attempt to locate Alexander.

The best case in support of Alexander's argument is *Bennett*, where the State did undertake efforts similar to those taken here. But we conclude that the State's efforts here are greater than those taken in *Bennett*. Here, the State followed up on every tip it received, affirmatively checked records to locate a friend of Alexander's to call for information, called Alexander's mother for information, tried promptly to execute the warrant at his last known address, and forwarded information to law-enforcement authorities in a nearby community where Alexander might have been located and to Arkansas where they even had an address for him—but not the help of the local police who had jurisdiction to arrest him there. In *Bennett*, officers never attempted to serve the warrant at the address listed on that warrant, made no effort to locate the defendant for about 4 months after its issuance, and then made no further effort for about 6 more months before putting the defendant's picture on a local "felon of the day" television program a

single time. Unlike those efforts in *Bennett*, the State's efforts in Alexander's case were reasonable and do not result in waiver of the prosecution of his probation violations.

Alexander emphasizes that he could have been located while he was living in Ulysses. He introduced a pay stub from April 2007 and a W-2 form from a Ulysses employer. In addition, Ulysses police officers who responded to a domestic disturbance could have learned of his warrant through a check of the national computer database. Apparently either that computer check wasn't made or wasn't accurately reported to the officers. While it's true that Alexander *could* have been found while he was in Ulysses, we don't think that a failure by police checking on a domestic-disturbance call to run a warrant check is itself so unreasonable that Alexander's due-process rights in the probation-violation case were violated by that failure.

Considering all of the steps that the State took to locate Alexander and serve this warrant, the State acted reasonably. The district court properly denied Alexander's motion to dismiss the probation-revocation proceeding.

Alexander raises two other issues on appeal. First, he argues that the district court abused its discretion by revoking his probation rather than giving him another chance. But whether to revoke probation is a judgment call for the district court, and we cannot reverse its decision if any reasonable person would agree with it. See *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 4, 182 P.3d 1231 (2008); *State v. Gumfory*, 281 Kan. 1168, Syl. ¶ 1, 135 P.3d 1191 (2006). The State presented evidence that Alexander had failed to report on several occasions and had left a threatening message for his probation officer. Alexander had already violated his probation and been given a second chance. He certainly knew better than to go AWOL for 2 years, and we certainly cannot reverse the district court's decision to revoke his probation rather than giving him a third chance to successfully complete it.

Second, Alexander argues that the district court violated his constitutional rights when it initially considered his criminal history in sentencing him without requiring that his convictions be proved to a jury. But Anderson didn't appeal his sentence within 10 days of

its pronouncement in June 2005 as required by K.S.A. 22-3608(c). We therefore have no jurisdiction to consider an appeal of Alexander's sentence. Alexander's appeal of his sentence must therefore be dismissed. See *State v. Inkelaar*, 38 Kan. App. 2d 312, Syl. ¶¶ 1, 3, 164 P.3d 844 (2007), *rev. denied* 286 Kan. 1183 (2008).

The defendant's appeal of his sentence is dismissed. The judgment of the district court is otherwise affirmed.