NOT DESIGNATED FOR PUBLICATION

No. 113,571

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

MELISSA L. HAMBY,
*Appellee.*

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed February 12, 2016. Reversed and remanded with directions.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Benjamin J. Fisher*, of Hutchinson, for appellee.

Before STANDRIDGE, P.J., BUSER and SCHROEDER, JJ.

*Per Curiam*: Prior to trial, Melissa L. Hamby successfully argued for the suppression of the evidence found in her 2006 Ford Mustang. The State now appeals the district court's suppression order pursuant to K.S.A. 2015 Supp. 22-3603. Upon review of the affidavit, we find the district court erred in granting Hamby's motion to suppress as the affidavit contained more than sufficient indicators of probable cause for a reasonably well-trained law enforcement officer to believe in the validity of the judicially approved search warrant. We reverse and remand with directions.

1

Based on an affidavit dated August 26, 2012, the Reno County Sheriff's Office obtained a search warrant for a silver 2006 Ford Mustang (Mustang) owned by Hamby and Jeramy A. Zwickl. The record also reflects Hamby and Zwickl lived at 719 E. Avenue C, Hutchison, Kansas. The affidavit submitted to obtain the search warrant is lengthy. We include the relevant portions here:

"I am a Sheriff's Deputy employed by the Reno County Sheriff's Office and assigned to the Reno County Drug Enforcement Unit, hereinafter D.E.U. I have training and experience in the investigation of cases involving the manufacturing, distribution and possession of controlled substances. . . .

"In October 2011, the D.E.U. received information from a confidential informant, (hereinafter 'C.I. # 1') who was seeking leniency on pending criminal charges. C.I. # 1 has provided information in the past that has proven to be reliable and credible. C.I. # 1 stated that Jeramy Zwickl, who resides at 719 E Ave C, Hutchinson, Reno County, Kansas, was selling a lot of 'kind bud' and was going to Colorado to pick it up. I know from my training and experience that 'kind bud' is a term used for high-grade marijuana normally raised as medical marijuana and sold illegally.

"On August 14, 2012 the D.E.U. received information from a confidential informant, (hereinafter 'C.I. #2') who was seeking leniency on pending criminal charges. C.I. #2 has provided information that the D.E.U. has not yet verified. C.I. #2 stated that Jeramy Zwickl on East Avenue C in Hutchinson, Reno County, Kansas, on the south side of the street, drives to Colorado to pick up marijuana a couple of times a month. C.I. #2 stated they [*sic*] have purchased marijuana from Jeramy on numerous occasions in the past. C.I. #2 described the house as blue-gray in color, and has a Jeep in the driveway with big mud tires. I later checked local law enforcement in-house records, which show that Jeramy Zwickl lists his address as 719 E Ave C. Members of the D.E.U. later went by the address 719 E Ave C and verified the color of the house to be light blue in color and a Jeep as described above parked in the driveway.

"Later on August 14, 2012, during surveillance, I observed a silver Ford Mustang with Kansas registration tag number 801DCS, which is registered to Jeramy Zwickl and

Melissa Hamby, parked in the driveway at 719 E Ave C, Hutchinson, Reno County, Kansas.

"On Thursday, August 16, 2012, I contacted an employee from Stutzman's Refuse Service prior to the trash being collected for 719 East Ave C. The normal trash collection day for this residence is on Thursday. The trash cart for the residence was placed at the curb for pick up. I confirmed that the trash bin on the truck was clear and observed the trash being collected from 719 East Avenue C. I then followed the Stutzman's Refuse truck to another location and collected the trash from the bin of the truck. Located in the trash was a credit card receipt for Domino's Pizza in the Denver, Colorado area; three hotel receipts all with the name Melissa Hamby, one hotel receipt was from 06-30-2012 for a one night stay in Fort Collins, Colorado. Another motel receipt was on 07-07-2012 for a one night stay at Motel 6 in Wheatridge, Colorado. Also located in the trash was a cell phone bill and Westar Energy bill with Jeramy Zwickl's name on it. Also located in the trash was a used clear plastic baggie that had a knot tied in the middle with the side torn out of it. There were also three small marijuana stems, one which was field-tested and resulted positive for marijuana.

"On August 17, 2012, I applied for a search warrant/order for placement of a GPS device on the silver Ford Mustang bearing Kansas tag 801DCS registered to Jeramy Zwickl and Melissa Hamby, VIN # 1ZVFT84N765222288. The search warrant/order was issued by Reno County District Court Judge Joseph McCarville on that date. I subsequently placed a GPS device on the vehicle pursuant to that search warrant/order.

"On Thursday, August 23, 2012, I collected the trash from 719 East Avenue C, Hutchinson, Reno County, Kansas in the same manner as described above. Located in the trash was mail addressed to Melissa Hamby at 719 East Avenue C, a pharmacy receipt for Kaleb Zwickl and used rubber gloves.

"On Friday, August 24, 2012 at approximately 5:00 pm (CDT), the silver Ford Mustang with Kansas registration tag number 801DCS left Hutchinson, Kansas. I followed the vehicle, and conducted surveillance with the aid of the GPS device. The Mustang traveled on K96 Highway all the way to Limon, Colorado, where it got onto Interstate 70 traveling westbound. In the early morning hours of August 25, 2012, the vehicle proceeded directly to a Motel 6 located at 9920 West 49th Avenue, Wheatridge, Colorado. This is the same motel as listed on the receipt dated 07-07-2012 which had been collected from the trash on August 16, 2012. I was able to visually confirm Jeramy

3

Zwickl and Melissa Hamby as they were checking into the motel. Zwickl and Hamby were the only occupants of the Mustang."

. . . .

"I believe the information contained within this Affidavit establishes probable cause to believe that Jeramy Zwickl and Melissa Hamby are involved in the distribution and use of controlled substances and that evidence of such crime will be found at, in, or upon the 2006 Ford Mustang bearing Kansas tag 801DCS registered to Jeramy Zwickl and Melissa Hamby, VIN# . . . .

"Wherefore, I respectfully request this Court issue a search warrant to search the silver 2006 Ford Mustang bearing Kansas tag 801DCS registered to Jeramy Zwickl and Melissa Hamby, VIN# . . ., to search for and to seize the following items: marijuana or any other controlled substance and other evidence related [thereto as described]."

The search warrant was executed on August 27, 2012, and the Sheriff's deputies recovered approximately 3 pounds of marijuana from the Mustang. Shortly after the search warrant was executed, Hamby was charged with possession of marijuana with intent to sell and other crimes.

Prior to trial, the district court granted Hamby's motion to suppress the evidence found in the Mustang. The State timely filed this interlocutory appeal.

ANALYSIS

In support of its decision to suppress the evidence seized from the Mustang, the district court found the affidavit supporting the search warrant (1) did not contain the probable cause necessary to issue the warrant and (2) the good-faith exception to the exclusionary rule of the Fourth Amendment did not save the actions of the officers. On appeal, the State argues the district court erred. Because we find the good-faith exception does apply to save the search warrant, we see no benefit in further analysis of whether the affidavit contained sufficient probable cause for it to be issued.

4

*The Good-Faith Exception*

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights protect citizens from unreasonable searches and seizures. *State v. Powell*, 299 Kan. 690, 694, 325 P.3d 1162 (2014). Under the exclusionary rule, suppression of illegally obtained evidence may be warranted to deter future violations of the Fourth Amendment. 299 Kan. at 694-95. However, there is a good-faith exception to the exclusionary rule when officers reasonably rely on a search warrant subsequently found to be invalid. *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677, *reh. denied* 468 U.S. 1250 (1984). There is a "strong preference" for the use of warrants by police in conducting a search; "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." 468 U.S. at 914, 916. The suppression of evidence found after a detached and neutral judge issued a search warrant and a police officer, acting in good faith, reasonably relied on the search warrant, does not further the purpose of the Fourth Amendment exclusionary rule. See 468 U.S. at 916-21.

The Kansas Supreme Court adopted the *Leon* good-faith exception in *State v. Hoeck*, 284 Kan. 441, 463-64, 163 P.3d 252 (2007). In *Hoeck*, the Kansas Supreme Court delineated the requirements that must be met for the good-faith exception to apply:

> "[T]he Fourth Amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid, except where: (1) the magistrate issuing the warrant was deliberately misled by false information; (2) the magistrate wholly abandoned his or her detached or neutral role; (3) there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid; or (4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized." 284 Kan. at 463-64.

5

Application of the good-faith exception is a question of law subject to unlimited review. 284 Kan. at 447. "To evaluate whether it was entirely unreasonable for the officers to believe the warrant was valid, we must determine 'whether a reasonably well trained officer would have known that the search was illegal despite the [judge's] authorization.' To make that determination, we look to the affidavit in its entirety." *Powell*, 299 Kan. at 710 (quoting/citing *Leon*, 468 U.S. at 922 n.23).

Relying on the third exemption from the *Leon* good-faith exception, the district court concluded the search warrant was issued on an affidavit with "so little indicia of probable cause that it [was] entirely unreasonable for an officer to believe the warrant [was] valid." The district court concluded the statement that the officers "observed several people smoking marijuana in the streets of Nederland, Colorado," provided no support for the affidavit and the inclusion of "this statement suggests the officers knew or should have known their information was lacking."

Given this ruling, the question presented on appeal is whether a reasonably well-trained law enforcement officer would have recognized the affidavit was so lacking in indicators of probable cause that he or she could not have held a good-faith belief in the validity of the warrant. See *Hoeck*, 284 Kan. at 465. Our answer to this question is no.

> "The threshold to avoid the *Leon* good-faith exception is a high one. *Messerschmidt* [*v. Millender*], 565 U.S. ___, 132 S.Ct. [1235,] 1245[, 182 L. Ed. 2d 47 (2012)]. The *Messerschmidt* Court held:
>
> > "'Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in "objective good faith." [Citation omitted.] Nonetheless, under our precedents, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness. Rather, we have recognized an exception . . . when "it is obvious that no

6

reasonably competent officer would have concluded that a warrant should issue." [Citation omitted.]' 132 S. Ct. at 1245." *Powell*, 299 Kan. at 701.

The good-faith exception "requires officers to have a reasonable knowledge of what the law prohibits. *United States v. Peltier*, 422 U.S. 531, 542[, 95 S. Ct. 2313, 45 L. Ed. 2d 374] (1975)." *Leon*, 468 U.S. at 920 n.20. Our measurement in this analysis is how a reasonable, well-trained law enforcement officer would respond, given the facts contained in the affidavit, once the search warrant was issued. "[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which the exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918.

As we consider what a reasonably well-trained law enforcement officer would do with this affidavit, we look at the affidavit in its entirety and find these facts significant:

- Statements from two confidential informants—one alleging the purchase of marijuana from Zwickl and the other stating Zwickl is selling marijuana, with both informants stating Zwickl goes to Colorado to purchase marijuana using the Ford Mustang registered to Zwickl and Hamby;
- Evidence obtained from two different trash pulls reflecting marijuana, drug paraphernalia, and prior trips to Colorado by Zwickl and Hamby; and
- Information on Hamby and Zwickl's most recent trip to Colorado just before the search warrant was issued.

As we expand these points, we are persuaded it was reasonable for the officers in this case to rely in good faith on the judicially approved search warrant.

7

*Statements by Confidential Informants*

We first consider the statements by the confidential informants. Hamby argues neither confidential informant was reliable because both informants were seeking leniency. Information received from an unquestionably honest citizen is entitled to a presumption of reliability. See *State v. Landis*, 37 Kan. App. 2d 409, 418-19, 156 P.3d 675, *rev. denied* 284 Kan. 949 (2007). The presumption is inapplicable when the informant is implicated in a crime and hopes to gain leniency. 37 Kan. App. 2d at 419. When an informant hopes to gain leniency, the affidavit must establish the informant's credibility or police officers must corroborate the informant's statements. 37 Kan. App. 2d at 419. The affidavit established confidential informant #1's (C.I. #1) credibility. However, confidential informant #2's (C.I. #2) reliability as an informant was untested and had to be corroborated. Some substantial corroboration, as in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), is required. *State v. Ibarra*, 282 Kan. 530, 549, 147 P.3d 842 (2006).

In *Gates*, the Bloomingdale, Illinois, Police Department received an anonymous letter indicating the Gates were engaged in selling drugs. The letter informed the police Mrs. Gates would be driving their car to Florida on May 3 to be loaded with drugs and Mr. Gates would fly down a few days later to drive the car back to Illinois. The police corroborated the Gates' address and discovered Mr. Gates had a flight reservation for May 5. After Mr. Gates boarded the flight, stayed overnight in Florida, and began driving a vehicle with Illinois plates northbound, the police obtained a warrant to search the Gates' home and vehicle. Police uncovered approximately 350 pounds of marijuana in the trunk of the vehicle. The Illinois Circuit Court suppressed the marijuana; and the Illinois Supreme Court affirmed, finding the letter failed to provide probable cause because it gave no indication about the letter writer's honesty or reliability. However, the United States Supreme Court reversed the Illinois Supreme Court, finding that given the totality of the circumstances the letter provided sufficient probable cause because the police had

8

substantially corroborated more than just easily obtained facts and conditions existing at the time of the tip. 462 U.S. at 241-46.

Kansas applies the totality of the circumstances analysis from *Gates* to judge a confidential informant's credibility and reliability. *State v. Pritchard*, 39 Kan. App. 2d 746, 752, 184 P.3d 951, *rev. denied* 286 Kan. 1184 (2008). Independent police corroboration may suffice when direct evidence of the informant's reliability or credibility is lacking. 39 Kan. App. 2d at 752. Clearly, C.I. #2's credibility was at issue; however, the affidavit informed the issuing judge of C.I. #2's credibility issue and that C.I. #2 was seeking leniency on pending criminal charges. A close look at the information C.I. #2 provided the Drug Enforcement Unit (D.E.U.) reflects:

"Jeramy Zwickl on East Avenue C in Hutchinson, Reno County, Kansas, on the south side of the street, drives to Colorado to pick up marijuana a couple of times a month. C.I #2 stated they [*sic*] have purchased marijuana from Jeramy on numerous occasions in the past. C.I #2 described the house as blue-gray in color, and has a Jeep in the driveway with big mud tires."

The information about Zwickl's house was easily verifiable. The D.E.U. verified Zwickl lived in a light blue house on East Avenue C and had a Jeep with mud tires in the driveway. All of these corroborated facts were easily obtained conditions existing at the time of the tip. However, the informant's tip did not stop with the house and vehicle; he also discussed Zwickl's trips to Colorado to buy marijuana and prior purchases of marijuana from Zwickl. The information about the house and Jeep may be insufficient on its own to establish C.I. #2's reliability, but when coupled with the other information in the affidavit reflecting trips to Colorado over two different weekends and the marijuana and drug paraphernalia found in the trash pulls, it all works together to reflect additional facts corroborating the information provided by C.I. #2. We find the independent

9

corroboration by the officers of C.I. #2's statements similar to the corroboration found in *Gates*.

Hamby also argues C.I. #1's information was stale and the State failed to brief and argue that the district court erred when it found C.I. #1's information was stale. An issue not briefed is deemed waived or abandoned. *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013). The State cited to supporting authority and argued, however briefly, the information was not stale. This issue was not waived. If the C.I.'s information was stale, it might support Hamby's argument the officers could not in good faith reasonably believe they had a validly issued search warrant.

The State responds that the information from C.I. #1 was not stale because, when combined with the information provided by C.I. #2, the information showed Zwickl's continuous criminal activity. Information may become stale when sufficient time has elapsed between when the information was received and when the information was acted on. The delay can create the appearance there is little probability that evidence of a crime will be found at a particular place. *State v. Hensley*, 298 Kan. 422, 429, 313 P.3d 814 (2013). The amount of time before information becomes stale varies depending on the facts and circumstances of each case. 298 Kan. at 430. In analyzing whether information is stale, the reviewing court considers four factors: (1) whether the activity is continuous, (2) the amount of time between when the information is received and the issuance of a warrant, (3) the verb tense in the affidavit supporting the warrant, and (4) the likelihood contraband could be removed from the search location. *State v. Hemme*, 15 Kan. App. 2d 198, 203, 806 P.2d 472 (citing *United States v. Myers*, 553 F. Supp. 98, 104-05 [D. Kan. 1982]), *rev. denied* 248 Kan. 998, *cert. denied* 502 U.S. 865 (1991).

The information from the two informants establishes a continuous pattern of conduct over many months. The information supplied by C.I. #1, although approximately

10

10 months old, reflects an ongoing business by Zwickl involving the sale of marijuana and trips to Colorado on a monthly basis to resupply. It is not stale.

*Trash Pulls*

Next, we review what the affidavit reflects the officer found in Hamby and Zwickl's trash and whether it provided additional indicators of probable cause for a reasonably well-trained officer to rely on the warrant.

> "[A] credit card receipt for Domino's Pizza in the Denver, Colorado area; three hotel receipts all with the name Melissa Hamby, one hotel receipt was from 06-30-2012 for a one night stay in Fort Collins, Colorado. Another motel receipt was on 07-07-2012 for a one night stay at Motel 6 in Wheatridge, Colorado. Also located in the trash was a cell phone bill and Westar Energy bill with Jeramy Zwickl's name on it. Also located in the trash was a used clear plastic baggie that had a knot tied in the middle with the side torn out of it. There were also three small marijuana stems, one which was field-tested and resulted positive for marijuana."

The trash belonged to Hamby and Zwickl and contained three marijuana stems and a plastic baggy consistent with the packaging of controlled substances. The Colorado motel and food receipts indicate travel by Hamby in Colorado on both June 30, 2012, and July 7, 2012. The receipts may or may not reflect two trips to Colorado within the space of 1 week. A reasonable inference can be made based on both confidential informants' information that regular trips were made to Colorado to buy marijuana and the receipts reflect two separate trips 1 week apart. The motel and food receipts found in the trash adds independent corroboration of the confidential informants' information. Thus, the trash pulls add indicators of probable cause that evidence—the marijuana bought to resupply the business—of a crime would be found in the Mustang as it returned from Colorado.

*Hamby and Zwickl's Trip to Colorado*

Finally, we consider Hamby and Zwickl's just-completed trip to Colorado with the all the other information contained in the affidavit. With evidence of prior trips to Colorado, this trip adds additional support to the affidavit statements that Zwickl was in Colorado with Hamby to resupply marijuana for his business and that the Mustang probably would contain marijuana upon its return to Hutchinson.

Given all the facts just discussed, the affidavit, when viewed in its entirety, was not a bare bones affidavit. It reflected extensive research by the officers and contained sufficient indicia of probable cause for a reasonably well-trained law enforcement officer to act in reasonable reliance on the search warrant issued by the judge. Regardless of whether there was sufficient probable cause to issue the search warrant, the district court erred in finding "there was so *little indicia* of probable cause contained in the affidavit that it was *entirely unreasonable* for the officers to believe the warrant was valid." (Emphasis added.) See *Hoeck*, 284 Kan. at 463-64.

As a final point, Hamby cites *State v. Alexander*, 43 Kan. App. 2d 339, 225 P.3d 1195, *rev. denied* 290 Kan. 1095 (2010), and argues the State failed to provide a record demonstrating error because the State failed to ask the district court for additional findings to support its determination that the information from C.I. #1 was stale. However, *Alexander* is distinguishable in that the district court held a hearing to determine whether Alexander's due process rights were violated. There was no record of the district court's ruling because the district court announced its ruling at the hearing and Alexander did not provide a copy of the hearing's transcript. A panel of this court held:

> "In the absence of a transcript or a request to the district court for additional findings, we
> will assume—to the extent the evidence supports it—that the district court made the

> factual findings necessary to support its conclusion that the State acted reasonably in attempting to execute the warrant for Alexander's arrest." 43 Kan. App. 2d at 342.

Here, the district court order suppressing the evidence seized from the Mustang is in the record. The State has provided a sufficient record demonstrating the alleged error.

Reversed and remanded with directions for the district court to deny Hamby's motion to suppress the search warrant and for further proceedings.