NOT DESIGNATED FOR PUBLICATION

Nos. 114,320
114,321

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THARIN DEIST,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed September 30, 2016. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ATCHESON, P.J., LEBEN, J., and HEBERT, S.J.

*Per Curiam*: Tharin Deist appeals the judgment of the district court revoking his probation and ordering him to serve the prison sentences originally imposed in two separate cases. Deist argues that the district court did not have jurisdiction to order revocation because the State failed to make reasonable efforts to timely find, arrest, and prosecute him for the alleged violations.

We agree with the conclusion of the district court that the State had undertaken reasonable efforts to locate Deist and we affirm the judgment of the district court revoking probation and ordering service of the original prison sentences.

1

*Factual and Procedural Background*

In June 2009, Deist pled no contest to one count of failure to register as a sex offender. Before sentencing, Deist requested that the court reduce his sentence or place him on probation instead of sending him to prison, as would be required under the sentencing guidelines. The district court granted his request and placed Deist on probation for 36 months, but if he failed at probation, his underlying sentence would be 120 months in prison.

Deist violated his probation several times. In June and October 2012, the court revoked Deist's probation for various violations. After the first revocation, the court ordered that Deist serve 60 days in jail and then return to probation for 36 months. After the second revocation, the court again imposed a 60-day jail sanction and reinstated Deist's probation for 24 months.

In August 2013, Deist pled guilty to several drug offenses. At sentencing, the district court placed Deist on probation with an underlying sentence of 40 months' imprisonment. In October 2013, Deist violated the terms of probation for his 2009 case again, and the court ordered him to serve 180 days in prison, followed by 12 months on probation.

On March 31, 2014, the State filed motions to revoke probation, claiming that Deist had violated his probation in his 2009 and 2012 cases because he had tested positive for drug use, denied having used drugs, refused to attend substance-abuse treatment, and had absconded from supervision. Deist had not been in contact with his probation officer since March 3, 2014, when he tested positive for drug use. On April 9, 2014, the district court issued arrest warrants for Deist in both cases, but he was not arrested until April 4, 2015, almost 1 year later. According to Deist, his probation term had ended in January 2015.

In May 2015, Deist filed motions to dismiss the revocation proceedings for both cases arguing the State had not made reasonable efforts to find and arrest him in a timely manner and, thus, had waived its ability to prosecute the violation.

The district court held a hearing on the motion on May 21, 2015. The State presented testimony from Detective Jesse Downard of the Reno County Sheriff's Office to demonstrate its efforts to find Deist. Downard testified that he had received the arrest warrants in April 2014 and had entered them into a national computer database used by law enforcement to check for arrest warrants. At the same time, he checked Deist's driver's license records. Downard did nothing further until July 2014, when he contacted the Rice County Sheriff's Office and the Sterling Police Department to inform them of the warrant because Deist's last known address was in Sterling, located in Rice County. According to Downard, a Sterling police officer had said that his office was aware of the warrant and had attempted to locate Deist. In the same month, Downard again checked Deist's driver's license records and updated the entry in the national database. He also testified that he investigated whether Deist had been arrested and incarcerated elsewhere. On questioning by defense counsel, Downard acknowledged that he had not done anything between August 2014 and April 2015 when Deist was arrested in Hutchinson (in Reno County). He testified that his office had only checked the most recent listed address and had not checked any of the other addresses listed in Deist's registration documents. He also admitted that he had not attempted to contact any of Deist's family or friends and had not tried to check whether Deist was employed or had any utilities in his name.

The district court concluded that the State's investigation had been reasonable because the Reno County Sheriff's Office had attempted to find him at his last known address (in Sterling) and couldn't have been expected to have located him in Hutchinson. Ultimately, the court found that Deist had violated his probation by absconding for 14

3

months and ordered him to serve the 120-month and 40-month prison sentences originally imposed in the cases.

Deist appeals to this court.

*The State's Investigation Was Reasonable*

Deist argues that because the State failed to conduct a reasonable investigation to locate and arrest him for the probation violation, it waived its ability to prosecute the violation. As a result, according to Deist, the district court violated his due process rights and lacked jurisdiction to revoke his probation after his probation term had expired.

Under K.S.A. 2015 Supp. 22-3716(a), a district court may issue an arrest warrant for a defendant for violating the terms of probation "[a]t any time during probation." Kansas law authorizes a district court to revoke probation after the probation term has ended "'if a warrant, petition or show cause order has been filed prior to the expiration of the probation term.'" *State v. Hall*, 287 Kan. 139, 143-44, 195 P.3d 220 (2008) (quoting *State v. Rocha*, 30 Kan. App. 2d 817, 820, 48 P.3d 683 [2002]). Even so, an arrest warrant does not extend a court's jurisdiction to revoke probation indefinitely. To ensure that defendants receive due process, or fair treatment under the law, before the State deprives them of their liberty by revoking probation, the State must act without unreasonable delay in issuing and executing an arrest warrant for a probation violation. *Hall*, 287 Kan. at 144; *State v. Alexander*, 43 Kan. App. 2d 339, 341, 225 P.3d 1195 (2010); *State v. Haines*, 30 Kan. App. 2d 110, 112, 39 P.3d 95 (2002). In other words, the State waives its right to prosecute a probation violation if it unreasonably delays in locating and arresting a probationer whose whereabouts it knew or could have discovered by conducting a reasonable investigation. *Alexander*, 43 Kan. App. 2d at 341-42; *State v. Bennett*, 36 Kan. App. 2d 381, Syl., 138 P.3d 1284 (2006).

4

Whether a defendant's due process rights have been violated is a question of law, which this court reviews independently, with no required deference to the district court's conclusion. *Hall*, 287 Kan. at 143; *Alexander*, 43 Kan. App. 2d at 342. This court also independently reviews whether the district court had jurisdiction to revoke probation. *Hall*, 287 Kan. at 143; *State v. Robinson*, 45 Kan. App. 2d 193, 193, 244 P.3d 713 (2011). Whether the State's delay was reasonable depends on the facts of each case. See *Hall*, 287 Kan. at 145.

Deist argues that the State's failure to look for him in Reno County, to investigate past addresses listed on the registration documents, to check utility records, or to contact his family or friends meant the State didn't make reasonable efforts to find him. The testimony in this case showed that the State had made some effort to find and arrest Deist but did not exhaust all possible means of locating him.

Significantly, the State does not waive its right to prosecute a probation violation merely because its efforts were imperfect so long as those efforts were reasonable. *Alexander*, 43 Kan. App. 2d 339, Syl. ¶ 2. The fact that the State didn't search as thoroughly as it could have does not automatically mean that the State's efforts were unreasonable.

Although, in his somewhat terse and conclusory brief, Deist refers generally to cases considering the parameters of review, he does not cite any specific case authority in support of his position that the State did not make reasonable efforts to find him. That may be because the State did more here than it has done in past cases where this court has found the State's efforts unreasonable. In *Haines*, the State failed to arrest Haines for 16 years and presented no evidence that it had attempted to locate him during that time other than sending one letter to his mother, which was returned, and one letter to his wife, even though the State was aware that his wife had left him. 30 Kan. App. 2d at 111, 113. In *State v. Myers*, 39 Kan. App. 2d 250, 178 P.3d 74 (2008), the defendant wasn't arrested

5

for more than 2 years after the warrant was issued, and the State failed to present evidence that it had done anything to locate the defendant or serve the warrant in that time. 39 Kan. App. 2d at 251-52, 254; see *State v. Morris*, No. 94,521, 2006 WL 3773350, at *3 (Kan. App. 2006) (unpublished opinion).

In *Bennett*, the State made some effort to find the defendant—just not enough. In that case, the defendant wasn't arrested until 2 years after the warrant was issued. The sheriff's office did nothing to investigate until 4 months after it received the warrant. At that point, it did some research on a potential alias and checked Social Security records. Another 6 months passed before officers did anything further. At that point, they featured Bennett as the "felon of the day" on a local television program, but they followed up on only one of the two tips they received in response. The State also made no attempts to serve the warrant at the address listed on the warrant. A panel of this court concluded that the State had failed to conduct a reasonable investigation to find Bennett, which resulted in the State waiving the right to prosecute the violation and the district court losing jurisdiction to revoke probation. 36 Kan. App. 2d at 387.

In this case, the State presented evidence of its efforts, which included submitting the warrant to a national computer database, checking the driver's license records twice, and contacting sheriffs and police near Deist's last known address, who also attempted to locate Deist. In *Bennett*, by contrast, the State did not even attempt to serve the warrant at the address listed on it. In this case, the State executed the warrant and arrested Deist approximately 1 year after it was issued, not 2 years as in *Bennett* or 16 years as in *Haines*.

The State calls our attention to this court's decision in *Alexander*. In *Alexander*, the State conducted a more comprehensive investigation. The State not only entered the information into the national database but also published Alexander's photograph in the local newspaper and reached out to his family and friends for information. Officers tried

6

to serve the warrant at his last address and also sent the warrant to the local police in the city where his wife lived. When the sheriff's office received information the defendant was in Arkansas, it contacted law enforcement there but received no assistance. The sheriff's office also followed up on other tips it received. From these facts, a panel of this court concluded the State had made a reasonable investigation and did not waive the probation violation. *Alexander*, 43 Kan. App. 2d at 344. Here, although the sheriff's office entered the warrant into the national database and reached out to law enforcement near Deist's last known address, the officers did not contact friends or family or seek help from the public in locating him.

The facts of this case most closely parallel the facts in *State v. Morales*, No. 113,333, 2016 WL 1391779 (Kan. App. 2016) (unpublished opinion). Again, in *Morales*, the defendant was not arrested for over 2 years after the warrant was issued. The State presented evidence that the sheriff's office had entered the information into local and statewide computer databases shortly after receiving the warrant. Ten months later, the sheriff's office faxed a copy of the warrant to the sheriff's office in the county where the defendant was last known to reside. That county sheriff's office attempted to contact and locate the defendant but was unable to do so. Over 1 year later, that sheriff's office contacted a local police department, which located and arrested the defendant. A panel of this court concluded that, under the circumstances, the State's efforts and investigation were reasonable, especially since the defendant in *Morales*, like Deist herein, was required to report any change of address to her probation officer and hadn't done so. 2016 WL 1391779, at *5. In this case, the Reno County Sheriff's Office waited only 3 months before it contacted the Rice County Sheriff's Office and local police department and was able to find Deist within 1 year of the warrant being issued.

Although the State could have conducted a more comprehensive search, under the facts of this case, the State's efforts to locate Deist were reasonable. Deist has not alleged or demonstrated any substantial prejudice resulting from time involved in the search and

7

his ultimate arrest on the warrant. See *Hall*, 287 Kan. at 154-55. The district court properly denied Deist's motion to dismiss the probation revocation proceeding.

Deist argues only the procedural questions in this appeal and does not directly raise or brief any questions regarding the district court's decision on the merits of the probation revocations. Any such potential claims are deemed to be waived and abandoned. See *State v. Boleyn,* 297 Kan. 610, 633, 303 P.3d 680 (2013).

Affirmed.