NOT DESIGNATED FOR PUBLICATION

No. 124,330

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KARA NICHOLE COLE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed September 9, 2022. Affirmed.

*Stephen L. Brave*, of Brave Law Firm, LLC, of Wichita, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., SCHROEDER and WARNER, JJ.

PER CURIAM: Kara Nichole Cole appeals from the district court's decision revoking her probation. The question we must answer is whether the State waived its right to prosecute the probation violation by unreasonably delaying the execution of the warrant for Cole's arrest. We hold it did not and affirm.

1

Cole pled guilty to driving while her license was suspended in June 2017. The district court sentenced her to a 90-day jail sentence but released her on one year of probation. A couple months later, the State moved to revoke Cole's probation after she tested positive for methamphetamine, amphetamine, and oxycodone. As a result, the district court issued a bench warrant for Cole in August 2017. The affidavit supporting the warrant listed Cole's last known address on Ash Street in Argonia. The warrant was returned served shortly thereafter.

The day after the warrant issued, Cole posted an appearance bond listing her address as "High St Argonia, KS 67004." The following month, Cole applied for appointed defense services in which she indicated that her address was "high st" in Argonia. These documents were in her court file.

The State filed a supplemental affidavit in November 2017 alleging that Cole again violated the terms of her probation by failing to report to the probation office.

Cole did not appear at her probation violation hearing. Another bench warrant issued in November 2017 based on Cole's failure to appear. The warrant was not returned served until April 2021. The return indicated that Cole was arrested in Sedgwick County.

Cole filed a motion asking the court to rule that the State waived its right to prosecute her for the probation violation by failing to timely execute the arrest warrant. The district court held an evidentiary hearing on the motion.

Deputy Jordan Douglas with the Sumner County Sheriff's Office testified as to the State's efforts to serve the warrant at the hearing. He testified that his office received the warrant in December 2017 and attempted to serve it three days later at the Ash Street

2

address. Deputy Douglas explained that he initially tried to serve the warrant at the Ash Street address because it was what was provided to him with the warrant. He said he did not have access to the court file, which would have contained the documents in which Cole indicated she lived on High Street.

When the attempted service at the Ash Street address was unsuccessful, Deputy Douglas posted Cole's wanted poster on Facebook. He also searched a law enforcement investigation program for Cole's information and found an address in Mulberry. Deputy Douglas did not have jurisdiction in Mulberry, but he contacted the local sheriff. Another deputy performed a license inquiry to see if Cole had a current address on her driver's license. The inquiry returned an address in Newton, so they contacted the Newton police department. A deputy also searched another database and found a different address in Mulberry. At the time of the hearing, that deputy was no longer with the department and Deputy Douglas could not say whether any further actions were taken in regard to that address. That database search occurred in June 2019. No other actions were taken to locate Cole after that.

The district court found that the State made reasonable efforts to execute the warrant and denied Cole's motion. Then, after finding that Cole violated the terms of her probation, the district court revoked Cole's probation and ordered her to serve her underlying 90-day jail sentence. Cole appealed.

ANALYSIS

Cole claims that her due process rights were violated by the State's unreasonable delay in executing the probation violation warrant. This court exercises unlimited review over whether due process requirements are satisfied. *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "imposes procedural and substantive due process requirements whenever the State deprives someone of liberty, such as through the revocation of an individual's probation." 287 Kan. at 143. When the State issues an arrest warrant, "due process demands that the State act without unreasonable delay in the issuance and execution of [the] arrest warrant." 287 Kan. at 144. "The failure to act in a timely and reasonable manner may divest the district court of jurisdiction to revoke probation if there is unreasonable delay, which must be determined on the circumstances of each case." *State v. Curtis*, 42 Kan. App. 2d 132, 136-37, 209 P.3d 753 (2009). A delay is unreasonable if "it prejudices the defendant or, alternatively, where there is an indication that the State has waived its right to pursue the violation." 42 Kan. App. 2d at 139. If the State waives its right to pursue the violation, then the probationer is not required to establish prejudice. 42 Kan. App. 2d at 139.

Cole argues that the State waived its right to pursue the violation. Waiver is "the voluntary relinquishment of a known right" and "may be express or implied." 42 Kan. App. 2d at 142 (citing Black's Law Dictionary 1611 [8th ed. 2004]). "'"An implied waiver may arise where a person has pursued such a course of conduct as to evidence an intention to waive a right, or where his conduct is inconsistent with any other intention than to waive it."' [Citations omitted.]" 42 Kan. App. 2d at 142. To determine whether the State has waived its right to pursue a probation revocation, courts "must consider the State's conduct to determine whether such conduct reflects (1) reasonable diligence in pursuing revocation or (2) unreasonable inaction in pursuing revocation, indicating implied waiver." 42 Kan. App. 2d at 143.

The parties each cite cases which help to define the line between reasonable and unreasonable delay. Cole contends her case is like *State v. Bennett*, 36 Kan. App. 2d 381, 138 P.3d 1284 (2006), or *State v. Myers*, 39 Kan. App. 2d 250, 178 P.3d 74 (2008). The

4

State contends those cases are distinguishable, and the better comparison is *State v. Alexander*, 43 Kan. App. 2d 339, 225 P.3d 1195 (2010). So we will examine each case.

In *Bennett*, this court found a delay of more than two years between issuance of a probation violation warrant for Wynona Bennett and Bennett's arrest was unreasonable. 36 Kan. App. 2d at 381. There were different addresses attributed to Bennett—one was listed on her warrant, another she provided at a preliminary hearing, and another was on her presentence investigation report. The police did not attempt to serve the warrant at any of the three addresses. The first attempt the police made at serving the warrant was several months after the warrant was issued after an officer did some research and identified a fourth potential address. Six months after that, the police featured Bennett in a "'felon of the day'" program in a newscast on a local television station. 36 Kan. App. 2d at 382. Eleven months after the warrant issued police received a tip on Bennett's whereabouts but they did not follow up on it. They received another tip two months later that they did follow up on. The person who answered the door at the address provided said she was the babysitter and the police left. Later that day they received another tip saying that Bennett was the person claiming to be the babysitter. Yet, Bennett was not arrested at that address until a week later.

There were several facts which led this court to conclude that the delay was unreasonable. First, the police did not attempt to serve the warrant at the address provided with it. Second, the police waited several months before making its first effort to locate Bennett and their efforts were insubstantial. Third, the police did not follow up on the first tip they received as to Bennett's location. 36 Kan. App. 2d at 386. And although they followed up on the second tip, they failed to return to the address upon learning that Bennett was the person claiming to be the babysitter. 36 Kan. App. 2d at 386-87. Finally, the court rejected the State's argument that Bennett attempted to conceal herself and its efforts were reasonable in light of that. The court stated: "Her efforts to conceal herself is only one factor to consider in determining the reasonableness of the investigation. If no

5

one is looking for you, you cannot be said to be concealing yourself." 36 Kan. App. 2d at 387.

The present case had a longer period of time—three years and five months as opposed to two years—between the issuance of the warrant and Cole's arrest. But the facts are readily distinguishable. The police in *Bennett* waited several months to serve the warrant and never attempted to serve it at the addresses provided, whereas in this case the police attempted to serve the warrant at the address provided to them within three days of receiving the warrant. The police in this case also followed up on the addresses they found that were associated with Cole. Because the other addresses were outside their jurisdiction, they were limited to notifying other police apartments to be on the lookout for Cole, but they did make some effort. In *Bennett*, the police had several potential addresses for Bennett but only attempted service at one. They also ignored a tip on Bennett's whereabouts.

*Myers* is even more distinguishable. Thaddeus Myers began probation in October 2001. He moved to Oklahoma in February 2004 without informing his probation office. The State moved to revoke Myers' probation in June 2004 and a warrant was issued that same month. Myers was not arrested for two years. There was no evidence that the police attempted to serve the warrant during those two years. The State argued that waiver of the probation violation was not appropriate because Myers contributed to the failed service by not reporting his new residence. This court rejected the State's argument, noting that concealment was only one factor to consider in the analysis and that it did not relieve the State of its obligation to conduct a reasonable investigation. 39 Kan. App. 2d at 253-54. Because there was a "nearly complete absence of evidence" regarding the State's efforts to serve the warrant, the court held that the State waived the probation violations asserted in its motion to revoke. 39 Kan. App. 2d at 255. The present case is distinguishable from *Myers* because the police here made several documented efforts to serve the warrant. The question is whether these efforts were reasonable under the circumstances.

6

The State points this court to *Alexander*, 43 Kan. App. 2d 339. In *Alexander*, this court held that the State did not waive its right to proceed with a probation violation hearing even though the State's efforts "fell short of perfection." 43 Kan. App. 2d at 339. During his probation term, Brent Alexander asked that his probation supervision be transferred from Garden City to Liberal because he had nowhere to live in Finney County, but he could live with his wife in Ulysses near Liberal. Alexander was supposed to fill out paperwork to facilitate the transfer but failed to do so. Alexander missed his next two meetings with his probation officer. When his probation officer called him and directed him to report and provide a residential address, Alexander did neither. The State moved to revoke Alexander's probation. A warrant was issued for Alexander in November 2005.

The police attempted to execute the warrant at Alexander's last known address that same month but were unsuccessful. They also sent a copy of the warrant with Alexander's photo to the Ulysses Sheriff's Office, though there was no evidence they attempted to contact Alexander's wife there. The other efforts to serve the warrant included contacting Alexander's mother and one of his friends but they did not have any useful information. Police also input Alexander's information into a national computer database and published a wanted photo in a local newspaper. When the police received tips that Alexander was working in Arkansas, they contacted local police but did not hear back from them. Police also received a tip that Alexander was working in Ulysses, but by the time they identified his employer several months later he was no longer working there. During the time the warrant was active, police had contact with Alexander on two different occasions and failed to arrest him on the outstanding warrant. One incident was when Alexander was a witness in a battery case and another was when police went to Alexander's residence on a domestic disturbance call. Alexander was eventually arrested in Arkansas in October 2007. Alexander moved to dismiss the probation violation on the basis that the State unreasonably delayed executing the warrant.

This court began by noting that the State's efforts were more extensive than those taken in *Myers* and *Bennett*. *Alexander*, 43 Kan. App. 2d at 342-43. The police went to Alexander's last known address, entered his information into a national law enforcement program, sought help from the public by publishing his photo in the local newspaper, followed up on tips they received, called Alexander's mother and friend, and forwarded information about Alexander to police in Ulysses and Arkansas. The court recognized that there were additional actions the State could have taken to execute the warrant more quickly but concluded that overall the State acted reasonably. 43 Kan. App. 2d at 344.

This case is much more similar to *Alexander* than *Myers* or *Bennett*. The police took many of the same steps—quickly attempting to serve the warrant at the address provided with the warrant, inputting the warrant information into law enforcement databases, publicizing a photo of the wanted person (albeit there was no evidence as to what impact such publications had), and contacting other jurisdictions when they identified potential addresses in those jurisdictions.

The reasons Cole provides for finding that the State engaged in unreasonable delay are not persuasive. First, Cole repeatedly asserts that she provided the district court with an updated address on High Street in Argonia and the police failed to attempt to serve the warrant there. This is not true. While Cole did say she lived on High Street, she did not provide a specific address. She is essentially arguing that the police should have gone up and down High Street in search of her which would be unreasonable. The State need not follow every lead or act perfectly for a court to find that the State made reasonable efforts. In *Alexander*, the police knew that Alexander wanted to live with his wife in Ulysses, but they did not attempt to contact her despite contacting Alexander's mother and friend.

Cole also makes the misleading assertion that between the attempted warrant execution on Ash Street in December 2017 and her arrest, the police "took no other steps

to execute the warrant." This ignores the multiple attempts to locate an accurate address for Cole, many of which are similar to the methods used by the police in *Alexander*. This included searching law enforcement databases for Cole's address and contacting other jurisdictions when they had reason to believe that Cole may reside there.

The biggest factor weighing against the State is the length of time, three years and nearly five months, that passed between the issuance and execution of the warrant. This is longer than the time elapsed in *Alexander*. Between June 2019 and April 2021 when Cole was arrested, Deputy Douglas did not believe they made any attempts to locate Cole. However, the State's actions were reasonable under the circumstances. As the district court noted, the State has limited resources and thousands of active warrants. The court also said that Cole "knew darn good and well she was on probation." Because she was on probation, Cole had a continuing duty to notify her probation officer of any changes in address. "[I]t should only be in the most unusual circumstances, those in which law enforcement exhibits a complete indifference to its responsibilities, like the courts in *Haines*, *Bennett*, and *Myers* were faced with, in order for the court to determine that [a] probationer's due process rights have been violated for failure to serve a warrant." *State v. Carleton*, No. 105,267, 2011 WL 6311920, at *4 (Kan. App. 2011) (unpublished opinion). Holding otherwise would "send[] the wrong message to probation violators" and suggest that all they need to do to be released from probation is to avoid being arrested for two years. *Myers*, 39 Kan. App. 2d at 257 (Malone, J., concurring).

For these reasons, we affirm the district court.

Affirmed.

9