NOT DESIGNATED FOR PUBLICATION

No. 115,930

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MELVIN R. WHITE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT L. SERRA, judge. Opinion filed October 13, 2017. Reversed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Jennifer S. Tatum*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM:  While Melvin R. White was confined in federal prison for eight years, the district court issued an arrest warrant for his failure to appear at a hearing to revoke his probation. There was no legal way for the State to secure White's return while he was serving his federal sentence. The State chose not to seek White's detention by filing a detainer when he was released on parole because he was incarcerated more than 250 miles away. After his release from prison, for the next 18 months, the State was aware that White was living in Jackson County, Missouri—just across the state line— and reporting to his parole officer. Because the State did nothing for that 18 months to

1

execute the warrant, we hold the State waived the right to prosecute White's probation violation and, thus, the court was without jurisdiction to proceed. We reverse.

*While on probation for a Kansas crime, White commits a federal offense.*

White pled guilty in 2004 to attempted possession of marijuana with the intent to sell—a drug felony, and aiding a felon—a nonperson felony. The Wyandotte County District Court sentenced White to a suspended 32-month prison sentence and placed him on 36 months' probation.

Because White was later arrested on federal charges for the sale of cocaine, in May 2006, the State moved to revoke his probation. When White did not appear in court as ordered for the hearing on the motion, the court issued a failure to appear warrant for his arrest. At that time, the Wyandotte County authorities, when they entered the warrant into the National Crime Information Center system, advised they would not extradite White from a distance greater than 250 miles.

After he was convicted for distributing cocaine, White was sentenced to federal prison in Greenville, Illinois. Greenville is over 250 miles away so the Wyandotte County Sheriff's Department had not placed a detainer on White when the prison checked the warrant in the NCIC system. In February 2013, White filed a motion to quash the probation revocation warrant. The State opposed the motion. White remained in federal prison from 2006 until 2014.

White was released from federal custody on April 2, 2014, and placed on parole for 10 years in Missouri. White then lived exclusively in the state of Missouri. White's parole officer told him of the outstanding warrant for the probation violation, but White did not turn himself in.

2

Over a year later, when he was pulled over for a traffic stop in October 2015, White was arrested in Jackson County, Missouri. Jackson County officials alerted the Wyandotte County Sheriff's Department that White was in custody and Wyandotte County extradited him. In November 2015, White was returned to Wyandotte County on the pending warrant for failure to appear at the probation revocation hearing. There is no evidence in the record that the State actively tried to arrest White on the failure to appear warrant while he was on federal parole in Jackson County.

White moved to dismiss the State's motion to revoke his probation, arguing the district court had lost jurisdiction over his case when the State failed to execute the arrest warrant in a timely manner. At the hearing, White argued that the State did not bring him before the court without unnecessary delay. The court denied White's motion to dismiss.

White admitted he violated his probation by committing a federal crime while he was on state probation. After finding that White had committed a new crime, the court revoked White's probation and ordered White to serve his prison sentence.

*Due to delay, the State waived its right to prosecute this probation violation.*

Because the State made no efforts to execute its arrest warrant while White was in federal prison or while he was living in Jackson County, Missouri, White contends that the State violated his due process rights and the district court had lost jurisdiction over him due to delay.

Indeed, a district court may lose jurisdiction over an alleged probation violator if the probationer is denied due process. The issuance of an arrest warrant does not extend a court's jurisdiction over a probationer indefinitely, and due process demands that the State act without unreasonable delay in the issuance and execution of an arrest warrant. *State v. Hall*, 287 Kan. 139, 144, 195 P.3d 220 (2008). The State's failure to act without

3

unreasonable delay divests the district court of jurisdiction to revoke the defendant's probation. *State v. Curtis*, 42 Kan. App. 2d 132, 142, 209 P.3d 753 (2009).

In Kansas, there are two ways to establish a due process violation because of the State's delay in prosecuting a probation violation. First, the defendant can show that the State waived its right to prosecute the probation violation. If the State waived the probation violation, the defendant does not need to show prejudice. Second, the defendant can establish that the delay was unreasonable because it prejudiced the defendant. *Curtis*, 42 Kan. App. 2d at 139; see *State v. Braswell*, No. 115,549, 2017 WL 1296084, at *2 (Kan. App. 2017) (unpublished opinion). Obviously, whether the State's delay was reasonable depends upon the facts of each case. *Hall*, 287 Kan. at 145.

In this case, we must look at two periods of delay to determine whether the State waived its right to prosecute White's probation violation: (1) the eight years when White was in federal prison; and (2) the 18 months that White was on federal parole in Jackson County, Missouri.

With regard to the time that White was in federal prison, prior cases guide our decision. The Supreme Court held in *Hall*:

> "[I]f an alleged probation violator is incarcerated as the result of a new felony conviction arising in another county, the State does not waive a probation violation if it lodges a detainer but does not execute a probation violation warrant while the alleged violator is imprisoned on a consecutive sentence. [Citation omitted.]" 287 Kan. at 153.

Here, White was in federal prison from 2006 until April 2014 on a conviction for distributing cocaine. The State did not lodge a detainer, but it did enter the warrant into the NCIC system. The failure to lodge a detainer did not make the delay unreasonable because there is no legal way to do so. In a recent unpublished case, this court recognized

4

that there is no mechanism for adjudication of a probation violation while a defendant is in federal custody:

> "Nonetheless, even if the State failed to lodge a detainer against Braswell, this situation is distinguishable from *Hall* because Braswell was incarcerated in federal prison. As noted by the district court, if a prisoner is incarcerated in another county in Kansas, the Uniform Mandatory Disposition of Detainers Act (UMDDA) applies, and the defendant may request final disposition of any 'untried indictment, information, motion to revoke probation or complaint pending against such person in this state.' Thus, if Braswell had been in a Kansas prison, the State could have adjudicated his probation violation because he could have been transported to Wyandotte County for a probation violation hearing.
>
> "If, however, a prisoner is incarcerated in another state or in federal prison, the Agreement on Detainers applies, and the prisoner can only request final disposition of an untried information, indictment, or complaint. Because Braswell was in federal prison, there was no mechanism for the adjudication of his probation violation until he completed his federal sentence. [Citations omitted.]" *Braswell*, 2017 WL 1296084, at *4.

Thus, under the law expressed in *Hall* and *Braswell*, the State's delay in executing its arrest warrant for a probation violation while White was in federal prison was reasonable. Simply put, since this was a probation violation and not an information, indictment, or complaint, the State had no legal way to secure his return to Wyandotte County until his release from federal custody. We turn now to the second period of delay: when White was placed on federal parole in Kansas City, Missouri, just across the state line and well within the 250-mile self-imposed limit for extradition.

The reported cases all point to an expectation that the State must do something to seek the return of a probation violator. It is clear from this record that for the 18 months after White was released, the State did not make any attempts to execute the probation revocation warrant. Under the law, we must consider the State's conduct and decide if the

5

State exercised reasonable diligence in pursuing revocation of White's probation. See *Curtis*, 42 Kan. App. 2d at 143.

This court has stated unreasonable delay equates to a waiver:

> "An unreasonable delay between the issuance and the execution of a probation violation warrant results in a waiver of the probation violation by the State. In determining whether the delay was unreasonable, the court should examine whether the State conducted a reasonable investigation into the defendant's whereabouts. If a waiver is shown, then the defendant need not prove prejudice from the delay to be entitled to reversal." *State v. Bennett*, 36 Kan. App. 2d 381, Syl., 138 P.3d 1284 (2006).

Again, in a later case, in *State v. Alexander*, 43 Kan. App. 2d 339, 341-42, 225 P.3d 1195 (2010), this court held that the State waives its right to prosecute a probation violation if it unreasonably delays in locating and arresting a probationer whose whereabouts it knew or could have discovered by conducting a reasonable investigation. But we must temper our concerns over delay with a sense of what is at stake: justice for all concerned.

This court has also noted that more than a lack of diligence by the State is required:

> "[I]t should only be in the most unusual circumstances, those in which law enforcement exhibits a complete indifference to its responsibilities, like the courts in *Haines, Bennett,* and *Myers* were faced with, in order for the court to determine that probationer's due process rights have been violated for failure to serve a warrant. To hold otherwise sends the wrong message to probation violators, leading them to the conclusion that all they need to do to be released from probation is move and avoid arrest for a few months or years." *State v. Carleton*, No. 105,267, 2011 WL 6311920, at *4 (Kan. App. 2011) (unpublished opinion).

6

We explore those three cases cited in *Carleton*.

In *State v. Haines*, 30 Kan. App. 2d 110, 39 P.3d 95 (2002), the trial court revoked Haines' felony probation more than 16 years after the probation violation warrant was issued. When Haines was placed on probation, out-of-state supervision was contemplated upon Haines finding suitable employment. Haines found employment as a truck driver and moved to Ohio. Haines was employed as a truck driver and lived in Ohio the entire time preceding his probation revocation. The State's efforts to locate Haines consisted of sending two letters: one letter was sent to his ex-wife and one letter was sent to his mother's residence and was returned for lack of sufficient address. There was no indication the State attempted to locate Haines through his driving license, social security number, or employer. This court held that the State failed to conduct a reasonable investigation to locate Haines to execute the warrant. The State therefore waived the probation violation. 30 Kan. App. 2d at 113.

In *Bennett*, 36 Kan. App. 2d 381, Bennett was arrested on a probation violation warrant approximately two years after the warrant was issued. The State never attempted to contact Bennett at the address listed on the warrant. This court found that a two-year delay before beginning the investigation to locate the probation violator was not a reasonable investigation. Accordingly, the State waived the probation violation. 36 Kan. App. 2d at 387.

In *State v. Myers*, 39 Kan. App. 2d 250, 178 P.3d 74 (2008), Myers was arrested for a probation violation a little more than two years after the bench warrant was issued. Myers had moved to Oklahoma without informing his probation officer. The court noted that while evidence was presented that the warrant was entered in the "hot files," there was no evidence that the warrant was sent to the local police department, assigned a deputy for service, or that any attempts were made to serve the warrant. The court also found that the State presented no evidence that Myers was "hiding out" in Oklahoma to

7

avoid a probation revocation hearing. Because of the absence of evidence of efforts the State made to attempt service on Myers or investigate his whereabouts, the court held that the State waived the probation violation. 39 Kan. App. 2d at 252-55.

We see similarities between those three cases and this case. Here, there was no evidence that the State attempted to serve White after he was released from federal prison. At the revocation hearing, the State admitted White's "whereabouts were known since he failed to appear. He was in federal custody in Greenville, Illinois, and then he was . . . on federal parole in Missouri." We see nothing in the record that discloses the State ever tried to communicate with White's parole officer.

While White was in federal prison, the State decided not to file a detainer on White because he was in Illinois more than 250 miles away. It does not matter what the motivations were for the self-imposed restrictions—the State's warrant was nonextraditable over 250 miles away. With respect to the time that White was in Missouri, the State argued that it had no authority to go into another state and arrest White. But in both *Haines* and *Myers*, this court determined that the State waived a probation violation even though the probation violator was out of state.

In *Curtis*, 42 Kan. App. 2d at 143-44, this court considered the first three "speedy trial" factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to assist its analysis determining whether the State acted with reasonable diligence in pursing Curtis' probation revocation. Those factors are (1) length of delay; (2) reason for the delay; and (3) the defendant's assertion of his or her right.

The 18-month delay here was not quite as long as the State's delay in executing its warrant in *Bennett* and *Myers*, but it was close.

The reason that the State did not serve White during the 18 months he was on federal parole was ostensibly because he was living in Missouri. However, Jackson County did ultimately extradite White when he was picked up for a traffic violation. The State offers no reason why it could not have asked Jackson County to pick White up sooner. Nor did the State offer any explanation why it did not ask for assistance from the federal parole officials.

White did file a motion to quash the warrant in February 2013. In our view, that shows he was not acquiescing in his arrest.

Although the State's inaction lasted approximately 18 months rather than two years as in *Bennett* and *Myers*, the complete lack of effort to serve White for that 18 months, coupled with knowledge of his whereabouts, means that the State waived the probation violation. Under these circumstances, White was not required to show prejudice. See *Curtis*, 42 Kan. App. 2d at 139.

Reversed.