(138 P.3d 1284)
No. 94,492

State of Kansas, *Appellee*, v. Wynona L. Bennett *Appellant.*

Opinion filed August 4, 2006.

*Nathan B. Webb*, of the Kansas Appellate Defenders Office, and *Brandi L. Studer*, legal intern, for appellant.

*Matt J. Maloney*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before HILL, P.J., GREENE, J., and BRAZIL, S.J.

HILL, J.: Wynona L. Bennett contends that a delay of more than 2 years between the issuance of a probation violation warrant and her arrest on that warrant is unreasonable. She argues such a delay is a waiver of her probation violation by the State and therefore the district court erred when it extended her probation. Because the facts show that the State did not conduct a reasonable investigation in order to find Bennett, and following prior cases, we hold that the revocation and reinstatement of Bennett's probation violated her due process rights. We reverse and remand with directions.

## Facts and Prior Proceedings

In December 2002, following her plea to one count of possession of cocaine, Bennett was sentenced to a 13-month prison term that was suspended, and was placed on 12 months' probation. A probation violation warrant was issued for Bennett on February 11,

2003, because her urinanalysis (UA) tested positive for cocaine. Bennett was not arrested on the warrant until March 14, 2005.

There were several addresses attributed to Bennett. The warrant listed "1425 N. Hillside, Wichita, KS 67214" as her address. At her preliminary hearing on July 2, 2002, Bennett listed her address as 2161 N. Minneapolis. On her presentence investigation report, which was filed on November 8, 2002, her address was listed as 554 N. Volustia, Wichita, Kansas.

Claiming that the State had failed to conduct a reasonable investigation into her whereabouts and had failed to timely execute the warrant, Bennett filed a motion to quash the probation violation warrant and to terminate her probation. The motion further alleged that Bennett did not make any effort to secret herself and that she attempted to turn herself in on two different occasions, and was told that someone would be by to collect her, but no one ever came. Her motion further claimed that she had lived at the N. Hillside address for over 2½ years until she moved to 1856 N. Grove in Wichita in November 2004.

The only witness at the hearing on Bennett's motion was Eric Ellington, who served arrest warrants for the Sedgwick County Sheriff's Office. He recounted the efforts made to serve the probation violation warrant. He testified that Bennett's warrant was assigned to him on February 12, 2003, but the first real effort made to locate Bennett or serve the warrant was in June 2003, when another officer did some research and found a possible residence of 320 E. Central and a possible alias of Betty Bennett. The other officer had also verified that the correct social security number was listed on the warrant but no wages had been claimed on that social security number since 2001.

Next, on December 29, 2003, Bennett was added to the "felon of the day" program, an effort between the sheriff's department and a local television station in which wanted felons were profiled during newscasts. Ellington believed that Bennett was actually televised as the "felon of the day" sometime during the first part of January 2004.

Ellington further testified that on January 14, 2004, he received a tip through the Crime Stoppers program. That is a program

where citizens can call if they know where a wanted person is located. This tip stated that Bennett would be at an address on North Chautauqua Street at 4 p.m. on that day. Ellington did not follow up on the tip personally and did not know whether any other law enforcement agency acted on the tip. Ellington explained that the Crime Stoppers tips are also shared with the Wichita Police Department, the State Highway Patrol, and sometimes the United States Marshals.

According to Ellington, another tip came through the Crime Stoppers program on March 8, 2005. This tip indicated that Bennett could be found at 1856 North Grove and also gave a physical description of her. On the same day, the Wichita Police Department sent officers to that address to follow up. When officers went to the house, a person who identified herself as a babysitter answered the door. The officers apparently did not find Bennett and left the premises. After the officers left the house, another tip was received indicating that the person who identified herself as the babysitter was actually Bennett. No arrest was made that day. Bennett was eventually arrested at the North Grove address on March 14, 2005.

Apparently, the address given for Bennett on the official file-stamped warrant was different than on the computer-generated version of the warrant used by the sheriff's department. Ellington testified that his copy of the warrant listed an address of 554 North Volustia, while the file-stamped warrant had the Hillside address. Ellington testified that no effort was made to find Bennett at the Hillside address.

The district court found that evidence existed to show that Bennett had attempted to conceal herself and that the State had used reasonable diligence to find her. The court denied her motion to quash the warrant.

At the same time, the court went on to hold an evidentiary hearing regarding the facts alleged in the warrant. The only testimony at the evidentiary hearing came from Christine Donivan, a court services officer, who testified that she conducted the February 11, 2003, UA and that Bennett tested positive for cocaine. She testified that Bennett acknowledged that she had used cocaine on February

9, 2003. Donivan claimed that she told Bennett to wait in the lobby while she discussed the violation with the judge, but she did not wait in the lobby. During closing argument, Bennett's counsel stated that she had advised him that someone told her while she was waiting in the lobby that she did not need to wait any longer and that she would be called. But no testimony was presented at the hearing to support this argument.

After hearing the evidence, the court found that the State had met its burden of establishing that Bennett violated the terms and conditions of her probation. The court ultimately placed the defendant on probation for 10 more months.

Bennett claims to us that the district court did not have jurisdiction to revoke her probation since her original probation period had already expired.

## Review Standard

We review probation revocations under an abuse of discretion standard. See *State v. Street*, 28 Kan. App. 2d 291, 292, 16 P.3d 333 (2000), *rev. denied* 271 Kan. 1041 (2001). However, when the issue of jurisdiction is raised, this court's review is unlimited. *State v. Rocha*, 30 Kan. App. 2d 817, 819, 48 P.3d 683 (2002).

## Analysis

Bennett bases her argument on the premise that the State failed to conduct a reasonable investigation into her whereabouts and to execute the warrant in a timely fashion. She relies on *State v. Haines*, 30 Kan. App. 2d 110, 39 P.3d 95, *rev. denied* 273 Kan. 1038 (2002). In *Haines*, the court held that an unreasonable delay between the issuance and the execution of a probation violation warrant results in a waiver of the probation violation by the State. In determining whether the delay was unreasonable, the court should examine whether the State conducted a reasonable investigation as to the defendant's whereabouts. If a waiver is shown, then the defendant need not prove prejudice from the delay to be entitled to reversal. 30 Kan. App. 2d at 112-13. In making this determination, the *Haines* court speaks of Constitutional limits:

"The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation. [Citation omitted.] Kansas law allows the revocation of probation after the term of revocation expires if the proceedings were instituted during the term of the probation and revocation occurs within a reasonable time thereafter. [Citation omitted.] Jurisdiction to revoke probation does not expire with the expiration of the probationary period; however, the court's authority is not without limit. Due process requires that the State act in a timely and reasonable manner." 30 Kan. App. 2d at 112.

In determining that the State waived the probation violation, the court in *Haines* recounted the poor investigation conducted by the State:

"The facts of this case do not favor the State's position or the decision of the trial court to revoke probation. The record is clear that the State's efforts to locate Haines were restricted to two letters, one sent to his ex-wife and one to his mother's residence that was returned for lack of a sufficient address. More than 16 years have gone by since the State acted. The record indicates Haines has been employed as a truck driver and lived in Ohio the entire time preceding the probation revocation proceeding. There is no indication that the State attempted to locate him through his driver's license, social security number, employer, or any means other than mailing letters to his mother's house and his estranged wife's house. At the time of the revocation hearing, Haines was still living in Ohio and was collecting social security benefits. It is clear he did not attempt to secret himself away. The State's failure to conduct a reasonable investigation to ascertain Haines' whereabouts constitutes a waiver of the violation. Since the government waived the violation, Haines does not have to show he was prejudiced by the delay. [Citation omitted.]" 30 Kan. App. 2d at 113.

In this case, the facts are not as clear as the 16-year delay in *Haines*. But, having said that, we cannot conclude that the State conducted a reasonable investigation into Bennett's whereabouts based on the facts available.

First, the State never attempted to contact Bennett at the address listed on the warrant. The State explains this failure by claiming that the sheriff's department did not have that address on its version of the warrant.

While this may be true, it does not justify the failure. A similar situation was faced in *Rocha*. In *Rocha*, this court found that the delay between the original revocation motion and the amended motion was too great and unduly prejudicial. The court then stated:

"At the hearing on the motion to revoke probation, the prosecutor explained that due to an error by one of the attorneys, he did not learn of Rocha's sentencing in Wyandotte County. Regardless of where the breakdown in communication occurred, the State's failure to conduct a reasonable investigation to ascertain Rocha's whereabouts constituted a waiver of the probation violation. [Citation omitted.] It is clear from the record on appeal that all parties involved knew Rocha was being detained in Wyandotte County. *The State must therefore accept responsibility for failing to keep track of Rocha. It is the State's responsibility to bring a probation revocation to the trial court in a timely manner.*

"We believe that the trial court did not have jurisdiction to revoke Rocha's probation. The delay in pursuing the initial motion to revoke probation was unreasonable. The second motion to revoke probation was filed years after Rocha had served his complete probationary term." (Emphasis added.) 30 Kan. App. 2d at 820-21.

In this case, it is clear that the State was given the address on Hillside Drive. The district court judge even stated that on the date the warrant was issued, Bennett told Donivan that she was living at the Hillside Drive address. Whatever breakdown occurred that caused the sheriff's department not to be provided this address is the fault of the State. Accordingly, this fact cannot be used to excuse the State's failure to investigate whether Bennett could be found at this address.

The other evidence presented at the hearing also shows that the State failed to conduct a reasonable investigation. Ellington testified that no effort was made to locate Bennett from February 11, 2003, the date the warrant was issued, until sometime in June 2003, when an officer did some research on Bennett. While this research resulted in a possible address for Bennett, no evidence was presented that anyone made any effort to find her at that address.

No further effort was made until Bennett was featured as a "felon of the day" in January 2004. However, this apparently produced no results. Furthermore, while Ellington testified that a tip was received on January 14, 2004, providing a time and place where the State could find Bennett, Ellington did not know whether anyone ever followed up on the tip. The first time Ellington could confirm that someone actually tried to contact Bennett was after receiving the tip on March 8, 2005, which indicated that she could be found at the North Grove address. Additionally, after leaving

the residence and receiving information that the person that claimed to be a babysitter was actually Bennett, officers did not return to arrest her until March 14, 2005.

These facts show that the State did not conduct a reasonable investigation in order to find Bennett. While several addresses were given in a short time for her, the State has not presented evidence that anyone tried to contact the defendant at any of these addresses other than the North Grove address in March 2005. Thus, the first real evidence of attempted contact with Bennett was almost 2 years after the warrant was issued. A 2-year delay before beginning the investigation does not constitute a reasonable investigation.

The State claims that evidence exists showing that Bennett attempted to conceal herself. While the lack of any wage information on her social security number since 2001, combined with the multiple addresses, and the evidence indicating that she claimed to be a babysitter when officers arrived in March 2005 is evidence of her attempts at concealment, this evidence does not negate the State's failure to conduct a reasonable investigation.

Really, the true extent of the Bennett's efforts at concealment cannot be ascertained due to the State's failure to conduct a reasonable investigation. Her efforts to conceal herself is only one factor to consider in determining the reasonableness of the investigation. If no one is looking for you, you cannot be said to be concealing yourself. Thus, Bennett's actions do not excuse the State's failure to conduct a reasonable investigation.

In conclusion, the State failed to present evidence showing that it conducted a reasonable investigation to find Bennett. Accordingly, the State waived the probation violation, and the district court lost jurisdiction to revoke Bennett's probation. Furthermore, she was not required to prove that she was prejudiced by the delay. Accordingly, the revocation and reinstatement of Wynona Bennett's probation violated her due process rights. We therefore reverse her probation revocation and remand with directions that Bennett's probation be terminated.

Reversed and remanded with directions.