(178 P.3d 74)
No. 98,007

STATE OF KANSAS, *Appellee,* v. THADDEUS J. MYERS, *Appellant.*

—

Opinion filed March 14, 2008.

*Michael E. Foster*, of Wichita, for appellant.

*Evan C. Watson*, deputy county attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before CAPLINGER, P.J., MALONE, J., and LARSON, S.J.

CAPLINGER, J.: Thaddeus Myers appeals the district court's denial of his motion to quash a probation violation warrant and terminate probation. Because the district court erred in finding the State made reasonable efforts to execute the probation violation warrant, we reverse and remand to the district court with instructions to quash the warrant and terminate probation.

### Factual and procedural background

Myers pled guilty to DUI and disorderly conduct and was sentenced to 6 months in the county jail and assessed a $500 fine and court costs for the DUI conviction; he also was sentenced to 30 days in the county jail for the disorderly conduct conviction, to be served concurrent to the DUI sentence. The court granted Myers probation for 1 year, beginning October 8, 2001.

After several prior extensions of Myers' probation, the State filed a motion to revoke Myers' probation on June 10, 2004, alleging Myers failed to report as instructed, failed to make monthly payments of costs, and failed to complete one of the special conditions of his probation.

Although a bench warrant was issued for Myers' arrest on June 10, 2004, he was not arrested until more than 2 years later, on June 28, 2006.

On December 21, 2006, more than 2½ years after issuance of the warrant, the district court conducted a hearing on the State's motion to revoke Myers' probation. At the hearing, the State recited the following stipulations by the parties:

"[T]hat the defendant violated probation as alleged in the motion to revoke filed on June 10th, 2004;
   "That the defendant has prior motions to revoke;
   "That the contact information of the defendant's probation office and officer have not changed at any time that the defendant has been on probation;
   "That the defendant moved to Oklahoma on February 14th, 2004, and has resided there until recently;

"That the defendant moved to Oklahoma without informing his probation officer;

"That the sheriff's testimony would be that there is no written record of any attempt to serve the warrant issued in this case in June 2004;

"That the—the sheriff's further testimony would be that the practice of the department is to send a copy of the warrant to the Wellington Police Department in a case where the defendant is believed to reside in Wellington, and also to assign that warrant to a deputy for service, but that there is no evidence that the State can present that that practice was complied with. We have no way of showing that.

"And further the sheriff's testimony would be that it's the practice of his department to enter the warrant into the Kansas hot files.

"It is a further fact and stipulated to that the warrant in this case issued by the court in June 2004 was entered into the computer Kansas hot files in June on June 10th, 2004."

Following these stipulations, Myers moved to quash the probation violation warrant and terminate his probation "based upon the State's failure to make a reasonable effort to serve the warrant that was issued in June of 2004" before June 2006.

After hearing argument, the district court found the State made "a reasonable investigation under the circumstances in this case" and denied Myers' motion to quash. Further, the court revoked Myers' probation and ordered Myers to complete his sentence after finding Myers violated his probation as alleged.

*Discussion*

On appeal, Myers reiterates the arguments he offered in support of his motion, contending the State's failure to use reasonably diligent efforts to locate him and serve the probation violation warrant in a timely manner violated his due process rights resulting in a waiver of the probation violation.

The State responds that because Myers contributed to the failed service by failing to report his new residence, a waiver of the probation violation is not appropriate.

Although we generally review a probation revocation for an abuse of discretion, a district court necessarily abuses its discretion when it makes an error of law. To the extent a question of law is at issue, our review is de novo. *State v. Gary*, 282 Kan. 232, 236, 144 P.3d 634 (2006); *State v. Bennett*, 36 Kan. App. 2d 381, 384,

138 P.3d 1284, *rev. denied* 282 Kan. 792 (2006). "Whether an individual's due process rights were violated is a question of law, over which we have de novo review." *Hearst v. State*, 30 Kan. App. 2d 1052, 1055-56, 54 P.3d 518 (2002). Further, Myers essentially challenges the district court's jurisdiction to revoke his probation, and jurisdictional issues are subject to unlimited review. See *Bennett*, 36 Kan. App. 2d at 384-87.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits procedurally and substantively the ability of the State to revoke a probationer's probation. A district court may revoke probation even if the terms of revocation have expired as long as "the proceedings were instituted during the term of the probation and the revocation occurs within a reasonable time thereafter. [Citation omitted.]" The court's jurisdiction to act, however, is "not without limit." *State v. Haines*, 30 Kan. App. 2d 110, 112, 39 P.3d 95, *rev. denied* 273 Kan. 1038 (2002). Clearly, the State is required to proceed in a timely and reasonable manner in order to meet the requirements of due process. See 30 Kan. App. 2d at 112. An unreasonable delay by the State in the issuance and execution of a warrant for the arrest of a probationer whose whereabouts are either known or ascertainable with reasonable diligence may result in the State's waiver of the violation and entitle the defendant to discharge. See *Haines*, 30 Kan. App. 2d at 112-13; *State v. Williams*, 20 Kan. App. 2d 142, 146, 884 P.2d 743 (1994).

In *Bennett*, 36 Kan. App. 2d at 387, a panel of this court held the State failed to conduct a reasonable investigation to find the defendant where the police had at least three addresses attributable to the defendant at the time the warrant issued but "the first real evidence of attempted contact with Bennett" did not occur until almost 2 years later.

The panel in *Bennett* acknowledged that the State presented some evidence that *Bennett* may have been attempting to conceal herself, but stated that "this evidence does not negate the State's failure to conduct a reasonable investigation." 36 Kan. App. 2d at 387. According to the panel, the State's failure to conduct a rea-

sonable search made it difficult to determine the extent to which Bennett was attempting to conceal herself. Moreover, such concealment was "only one factor to consider in determining the reasonableness of the investigation" and did not excuse the State's failure to conduct a reasonable investigation. 36 Kan. App. 2d at 387.

Myers contends the reasoning of *Haines* and *Bennett* applies here and requires that we find the State failed to make reasonable efforts to serve the warrant. The State argues no such finding is required here, as evidence was presented through the stipulation that the State made reasonable efforts to serve the defendant. Specifically, the State points to the stipulation regarding the "practice" of the sheriff's office to send a copy of the warrant to the local police department, to assign the warrant to a deputy for service, and to enter the warrant into the Kansas "hot files."

Significantly, while evidence was presented that the warrant was entered in the hot files, no evidence was presented that the warrant was sent to the local police department or assigned to a deputy for service, or that any attempts were made to serve the warrant. Instead, the trial court merely presumed such action was taken pursuant to the usual "practice" of the sheriff's office.

Instead of reviewing the State's actions, or rather inaction, the district court focused on Myers' duty to advise the probation office of his current address. The court stated: "You can't put the blame at the feet of the State." However, *Haines* and *Bennett* specifically found that the State's failure to conduct a reasonable investigation into the probationer's whereabouts constitutes a waiver of the probation violation. Further, because the government has waived the violation, the probationer "does not have to show he was prejudiced by the delay." *Haines*, 30 Kan. App. 2d at 113.

As in *Bennett*, the State implies by its arguments that Myers concealed himself. Specifically, the State suggests that probationers should not be encouraged to "take a shot at getting the court to find a waiver by . . . simply *hiding out for as long as possible*." (Emphasis added.) The State also suggests that a probationer who fails to provide his or her probation officer with a new address despite an affirmative duty to do so should not be "rewarded with

a discharge from the case for the reason that the state failed to cast out a dragnet" other than entering the warrant in the hot files and sending a copy of the warrant to the local police department and assigning it to a deputy for execution.

While the evidence in this case did establish that Myers moved to Oklahoma without informing his probation officer, the State presented no evidence suggesting Myers was "hiding out," much less hiding out for the purpose of ultimately having his probation terminated due to waiver. Moreover, even the evidence the State points to as evidence of its efforts to conduct an investigation is not supported by the record. The stipulation entered into evidence in this case merely established that the "practice" of the State was to send a warrant to the local police department and assign the warrant to a deputy for service. Notably, the stipulation confirmed that "there is no evidence that the State can present that [this] practice was complied with [here]." Finally, the stipulation concedes: "We have no way of showing that."

In light of the nearly complete absence of evidence as to efforts *actually* made by the State to attempt service on Myers or investigate his whereabouts, we conclude the district court erred in finding the State made a timely and reasonable effort to serve the warrant in this case.

Thus, we hold the State waived the probation violations asserted in its June 10, 2004, motion to revoke. We reverse the district court's order revoking probation and ordering Myers to serve his underlying sentence, and we remand with directions to the district court to terminate Myers' probation.

Reversed and remanded with directions.

MALONE, J., concurring: I concur with the result reached by the majority, but only because the State failed to provide evidence that anyone actually attempted to serve Thaddeus J. Myers with the probation violation warrant at his last known address.

*State v. Haines*, 30 Kan. App. 2d 110, 39 P.3d 95, *rev. denied* 273 Kan. 1038 (2002), is clearly distinguishable from the facts of this case. In *Haines*, the defendant had been informed that if he paid off his fines and court costs, he would no longer be required

to report on probation. The defendant understood that his ex-wife had paid the fines and court costs, but apparently this never happened. The defendant then moved to Ohio where he lived openly and maintained steady employment. A probation violation warrant was issued, and the defendant was arrested 16 years later in Ohio. The record indicated that the State's efforts to locate the defendant during this time were limited to two letters, one sent to the defendant's ex-wife and one sent to the defendant's mother. Under these circumstances, the court held that the State had failed to execute the probation violation warrant within a reasonable time. 30 Kan. App. 2d at 112-13.

*State v. Bennett*, 36 Kan. App. 2d 381, 138 P.3d 1284, *rev. denied* 282 Kan. 792 (2006), is also distinguishable from the facts of this case. In *Bennett*, a probation violation warrant issued for the defendant was not executed for more than 2 years. During most of this time, the defendant lived at her Wichita address which had been provided to the probation office. The defendant never moved outside the city. According to the defendant's motion to quash the warrant, the defendant did not make any effort to secrete herself and she attempted to turn herself in on two occasions and was told that someone would be by to pick her up, but no one ever came. The testimony at the probation violation hearing indicated that the State never attempted to contact the defendant at the address listed on the warrant. Furthermore, the State made no substantial effort to locate the defendant other than to include her name in a local "felon of the day" program. Under these circumstances, the court held that the State had failed to execute the probation violation warrant within a reasonable time. 36 Kan. App. 2d at 386-87.

Here, it is important to note that the conditions of Myers' probation included that he report to his probation officer on a regular basis and that he notify his probation officer of any change of address. Myers was also ordered not to leave the state of Kansas without first obtaining permission from his probation officer. Myers flagrantly violated these conditions and moved to Oklahoma without permission where he lived for 2 years. During this time, Myers had a *continuing duty* to report to his probation officer and

to notify his probation officer of his new address. Myers was certainly aware that he was in violation of his probation and that a probation violation warrant probably had been issued for his arrest.

Under these circumstances, I believe it would have been reasonable for the sheriff's office to make one attempt to serve Myers with the probation violation warrant at Myers' last known address and, if this failed, to place the warrant with the National Crime Information Center or some other computerized database for tracking warrants. I take exception to the language in *Haines* and *Bennett* that imposes a duty on the State to "investigate" a probation absconder's whereabouts. For instance, *Haines* suggests that if a probationer initially cannot be found, then the State should attempt to locate the probationer through his or her driver's license, social security number, employer, or other means. 30 Kan. App. 2d at 113. I disagree. Law enforcement officers throughout Kansas are assigned the task of executing thousands of probation violation warrants in misdemeanor and felony cases. They have limited resources to accomplish this task. Courts should not impose a duty on law enforcement officers, including probation officers, to "investigate" the whereabouts of probation absconders in addition to their many other duties.

Myers was never entitled to be placed on probation in the first place. This was an act of grace by the court. Therefore, it should generally take an unusual set of circumstances, like the court was faced with in *Haines,* in order for the court to determine that Myers' due process rights have been violated. Quite frankly, there is nothing unusual about taking 2 years to execute a misdemeanor probation violation warrant, especially when the defendant has absconded from the state. Probation violation hearings similar to the one in Myers' case are conducted on a regular basis in courts throughout Kansas. Courts are sending the wrong message to probation violators if they are allowed to believe that all they need to do to be released from probation is move out of state and avoid being arrested for 2 years.

Nevertheless, because the record here reflects that the State failed to make a single attempt to serve Myers with the probation

violation warrant at his last known address, I agree with the majority that the State's inaction constituted a waiver of the probation violation.