NOT DESIGNATED FOR PUBLICATION

No. 122,763

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERIC VINCENT JAMES,
*Appellant*.


MEMORANDUM OPINION

Appeal from Russell District Court; STEVEN E. JOHNSON, judge. Opinion filed March 5, 2021. Affirmed.

*Bradley T. Steen*, of Law Office of B. Truman Steen, LLC, of Ellsworth, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before HILL, P.J., GARDNER, J., and BURGESS, S.J.

PER CURIAM: Eric Vincent James pled no contest to criminal threat and stalking and was sentenced to probation. After allegedly violating the terms of his probation, James was arrested and released on bond. He then failed to appear at the probation violation hearing. His probation term expired three months before the district court issued an arrest warrant for failure to appear. After James was arrested, the district court revoked his probation. James appeals, arguing the district court lacked jurisdiction to revoke his probation. James argues his probation term expired before the district court issued the warrant for failure to appear, and the delay in issuing the warrant violated his due process rights. Finding no error, we affirm the district court's revocation of James' probation.

1

FACTS AND PROCEDURAL HISTORY

James pled no contest to criminal threat and stalking. On November 20, 2018, the district court sentenced James to 12 months' probation with an underlying sentence of 12 months' imprisonment with 12 months' postrelease supervision.

After James admitted to violating multiple terms of his probation, the district court found James violated the terms of his probation but released him to get treatment. The district court stated that it would consider James' time in jail before the violation hearing as a three-day quick dip jail sanction.

On May 31, 2019, James' intensive supervision officer filed a report alleging James again violated the terms of his probation by failing to complete inpatient treatment and leaving against medical advice. The district court issued an arrest warrant for the alleged probation violations. James was arrested and subsequently released on bond with instructions to appear at the violation hearing on August 1, 2019. The hearing was later continued to August 20, 2019, at James' request.

On August 20, 2019, the district court held the probation violation hearing, but James did not appear. The district court stated that it could not hold the hearing without James and would issue a bench warrant for failure to appear. During this discussion, James' attorney informed the court that James' mother received a call from James, stating he was stuck somewhere but would not indicate where. The district court recessed for 25 minutes to give James a chance to appear. When the district court reconvened, James was still not present but had texted his mother that he had no way to get to the hearing. The district court stated that it would "continue with [its] previous order of a no bond bench warrant."

James' probation term expired on November 20, 2019. The district court issued the failure-to-appear warrant on February 19, 2020. James was arrested five days later.

On March 4, 2020, the district court held a probation revocation hearing. James made an oral motion to dismiss for lack of jurisdiction, arguing his probation term ended November 20, 2019, and the arrest warrant was not issued within 30 days of the termination date as required by the probation revocation statute. The district court denied the motion, finding the warrant at issue was for failure to appear and it was not governed by the probation statute. The district court proceeded to hear evidence on the violations and determined that James violated the terms of his probation. The district court revoked James' probation and ordered him to serve the remaining 43 days of his sentence and the postrelease supervision term. James timely appeals.

ANALYSIS

James argues the district court erred in denying his motion to dismiss the probation violation for a lack of jurisdiction. He asserts that under K.S.A. 2020 Supp. 22-3716(e), the district court had to issue the warrant by December 20, 2019—30 days after the termination of his probation term—to retain jurisdiction over the probation violation. The warrant was issued on February 19, 2020. James also argues the State waived its ability to proceed against him because it failed to timely execute the warrant as required under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The State counters that it complied with K.S.A. 2020 Supp. 22-3716 because the arrest warrant for the probation violations was filed on May 31, 2019. The State points out that the warrant issued in February 2020 was for failure to appear and is not governed by the probation revocation statute. In regard to the waiver claim, the State argues it could not unreasonably delay the execution of a warrant that was never issued, and any

3

delay in prosecuting the probation violation was due to James' failure to appear at the violation hearing.

*The district court had jurisdiction to revoke James' probation because the February 2020 warrant for failure to appear is not governed by the probation revocation statute.*

Whether jurisdiction exists is a question of law over which this court exercises unlimited review. *State v. Lundberg*, 310 Kan. 165, 170, 445 P.3d 1113 (2019). Additionally, statutory interpretation is a question of law subject to unlimited review. 310 Kan. at 170. This court's rules regarding statutory interpretation are well known:

> "'[W]e first attempt to give effect to the intent of the legislature as expressed through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to express language, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. Stated yet another way, a clear and unambiguous statute must be given effect as written. If a statute is clear and unambiguous, then there is no need to resort to statutory construction or employ any of the canons that support such construction.'" *State v. Ayers*, 309 Kan. 162, 164-65, 432 P.3d 663 (2019).

K.S.A. 2020 Supp. 22-3716 governs the procedure for probation violations and revocation. Two subsections address the district court's ability to issue an arrest warrant for alleged violations of the terms of probation:

> "(a) At any time during probation, assignment to a community correctional services program, suspension of sentence or pursuant to subsection (e) for defendants who committed a crime prior to July 1, 1993, and at any time when a defendant is serving a nonprison sanction for a crime committed on or after July 1, 1993, or pursuant to subsection (e), the court may issue a warrant for the arrest of a defendant for violation of any of the conditions of release or assignment, a notice to appear to answer to a charge of

4

violation or a violation of the defendant's nonprison sanction. . . . After making an arrest, the court services officer or community correctional services officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to defendants arrested under these provisions.

. . . .

"(e) The court shall have 30 days following the date probation, assignment to a community correctional service program, suspension of sentence or a nonprison sanction was to end to issue a warrant for the arrest or notice to appear for the defendant to answer a charge of a violation of the conditions of probation, assignment to a community correctional service program, suspension of sentence or a nonprison sanction." K.S.A. 2020 Supp. 22-3716 (a), (e).

When read together, the provisions indicate that the district court maintains continuing jurisdiction to issue an arrest warrant for alleged probation violations until 30 days after the termination of the defendant's probationary period. See *State v. Cisneros*, 36 Kan. App. 2d 901, 903, 147 P.3d 880 (2006) (stating same referencing a prior version of subsection [e]). Subsection (a) also states that the pretrial bail statutes are applicable to defendants arrested under a probation violation warrant. K.S.A. 2020 Supp. 22-3716(a). James uses this sentence as the linchpin of his jurisdiction argument. He asserts that because subsection (a) incorporates the bail provisions, any warrant issued pursuant to those provisions is covered within the undefined term "warrant" in subsection (e). We disagree.

James' argument is contrary to the statute's plain language. The language of K.S.A. 2020 Supp. 22-3716 defines and limits the type of warrants the statute covers. K.S.A. 2020 Supp. 22-3716(a) states: "[T]he court may issue a warrant for the arrest of a defendant *for violation of any of the conditions of release or assignment*." (Emphasis added.) Similarly, K.S.A. 2020 Supp. 22-3716(e) states: "The court shall have 30 days . . . to issue a warrant for the arrest or notice to appear *for the defendant to answer a charge of a violation of the conditions of probation*." (Emphasis added.) The plain

5

language of K.S.A. 2020 Supp. 22-3716 establishes that it only addresses the issuance of warrants for the violation of the conditions of probation. It does not discuss or govern the issuance of a bench warrant for failure to appear.

The plain language also indicates that the bail provisions govern the issuance of the February 2020 warrant. K.S.A. 2020 Supp. 22-3716(a) states that the "[p]rovisions regarding release on bail of persons charged with a crime shall be applicable to defendants *arrested* under these provisions." (Emphasis added.) By the plain language of subsection (a), the bail provisions only apply *after* a probationer has been arrested pursuant to the procedure outlined in the first part of subsection (a). This means a probationer cannot be released on bond unless he or she has been arrested on a warrant for violating the terms of probation, the type of warrant discussed by subsections (a) and (e). K.S.A. 2020 Supp. 22-3716 does not discuss the procedure for issuing a warrant for failure to appear or failure to comply with the conditions of a bond. Instead, subsection (a) explicitly states that the bail provisions apply. It is the bail provisions of K.S.A. 22-2801 et seq. that govern the procedure for addressing a probationer's failure to appear when released on bond after having been previously arrested on a warrant for violating the terms of probation.

The district court issued the May 2019 warrant for James' probation violations pursuant to K.S.A. 2020 Supp. 22-3716(a). Without question he was still on probation at that time. He was arrested on that warrant and released on bond. The February 2020 warrant was issued when James failed to follow the conditions of his release by failing to appear at the probation violation hearing. The February 2020 warrant is governed by the bail statutes and not K.S.A. 2020 Supp. 22-3716, as argued by James. The district court did not err in denying James' motion to dismiss for lack of jurisdiction.

6

*There was no due process violation due to a delay in the execution of the warrant.*

In regard to James' due process claim, he correctly assets that "the issuance of an arrest warrant does not extend a court's jurisdiction over a probationer indefinitely, and due process demands that the State act without unreasonable delay in the issuance and execution of an arrest warrant." *State v. Hall*, 287 Kan. 139, 144, 195 P.3d 220 (2008). James argues this court should adopt the rationale of *State v. Myers*, 39 Kan. App. 2d 250, 178 P.3d 74 (2008), and find the State waived its ability to proceed against him on the probation revocation because the State unreasonably delayed acting.

In *Myers*, the district court issued a bench warrant for Myers' arrest based on allegations that he violated the terms of his probation, but Myers was not arrested on that warrant until two years later. He argued that the State waived its right to proceed against him on the probation revocation because it did not serve the warrant in a timely manner. The panel agreed, finding no evidence that the State made any effort to attempt service or investigate his whereabouts during the two-year time frame. 39 Kan. App. 2d at 255.

*Myers* is clearly distinguishable. James is challenging the almost six-month delay between his failure to appear at the final revocation hearing and the State arresting him on the February 2020 warrant. *Myers* specifically addresses the extended delay between the time the warrant was issued and the time Myers was arrested on that warrant. In this case, there was no significant delay between the issuance of the warrant and the arrest of James. He was arrested within five days of the issuance of the warrant. *Myers* does not support James' argument.

The reasoning and outcome in *State v. Crout*, No. 98,202, 2008 WL 3852172 (Kan. App. 2008) (unpublished opinion), is more enlightening. Crout was arrested on a warrant for violating the terms of his probation, appeared at an initial hearing in 2004, and was released with instructions to return for the scheduled revocation hearing. Crout

7

subsequently failed to complete a drug screening as required, and the district court issued a bench warrant. Crout did not appear at the scheduled revocation hearing, and he was not arrested until approximately three years later. Crout argued that the three-year delay was a due process violation.

A panel of this court found that the delay did not amount to a due process violation because the delay was caused by Crout's intentional failure to appear at the final revocation hearing. 2008 WL 3852172, at *4. The panel reasoned that "the hallmark of due process is notice and an opportunity to be heard at a meaningful time and in a meaningful manner." 2008 WL 3852172, at *4. As a result of his initial appearance for the probation violation, Crout had notice of the scheduled final revocation hearing. The panel also pointed out that based on the fact that probation violation proceedings had already been commenced and the probationer had already appeared and participated in those proceedings, it was distinguishable from other cases finding a delay in executing the warrant for violating the terms of probation. 2008 WL 3852172, at *3.

There was no due process violation in this case. A probation violation warrant was timely issued, and James was arrested on the probation violation warrant. James was released on bond and was instructed to appear at the August 2019 revocation hearing. Instead, he intentionally failed to appear. James was contacted the day of the hearing, and the court gave him additional time to appear. There was an unexplained delay in the issuance of the bench warrant for failure to appear, but once the warrant was issued, the State timely executed it within five days. Under these circumstances, we find no due process violation.

Affirmed.

8