NOT DESIGNATED FOR PUBLICATION

No. 125,539

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

CHARLES JERRY TUCKER III,
*Appellant.*


MEMORANDUM OPINION

Appeal from Cherokee District Court; MARADETH FREDERICK, judge. Submitted without oral argument. Opinion filed November 17, 2023. Reversed and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, P.J., ATCHESON, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: Nearly five years after issuing a warrant for the arrest of Defendant Charles Jerry Tucker III for a probation violation, the Cherokee County District Court found him in violation, imposed a jail sanction, and extended his probation. Tucker contends both that the district court ceased to have subject matter jurisdiction and that the lengthy delay in pursuing the matter deprived him of a constitutionally protected due process right. Tucker's due process argument is well-taken. We, therefore, reverse the district court and remand with directions that Tucker be discharged from probation.

After Tucker pleaded no contest to aggravated assault and criminal threat, the district court imposed a controlling 21-month prison term on him in April 2017 and placed him on probation for 24 months, reflecting a standard guidelines sentence. About six months later, the State filed a motion to revoke the probation because Tucker had failed to report as required. The district court promptly issued an arrest warrant for Tucker. The record shows that Tucker was then serving a three-year sentence in the Missouri prison system, presumably accounting for his failure to report to his Cherokee County probation officer. The State did not file a detainer against Tucker in Missouri.

In March 2020, as COVID-19 spread on a pandemic scale, the district court withdrew the arrest warrant for Tucker and several weeks later issued a notice for him to appear on the probation violation. The notice was returned without successful service at the address identified for Tucker. Then, in a word, nothing happened for more than two years.

The State filed another motion to revoke Tucker's probation in June 2022 based on his failure to report in 2017, and the district court issued a new arrest warrant. Tucker was picked up on the warrant in July. The district court held a probation revocation hearing on August 10. At the hearing, Tucker argued he was entitled to be released from probation because the district court lost jurisdiction when it withdrew the arrest warrant in March 2020 and, alternatively, because the five-year delay in prosecuting the violation deprived him of due process. The district court reasoned that the recent motion to revoke related back to the 2017 motion, thereby preserving jurisdiction. Without any explanation, the district court also held the pandemic amounted to an exceptional circumstance excusing the delay in pressing the probation violation and thus obviating any deprivation of Tucker's constitutional due process rights.

Having lost those arguments, Tucker stipulated to the failure to report. The district court found Tucker violated his probation, imposed a 180-day jail sanction for the

violation, and extended the probation for 24 months. Tucker has appealed. As far as we are aware, Tucker remains on probation.

On appeal, Tucker essentially reprises the arguments he presented in the district court. We first consider jurisdiction and then due process.

In his appellate brief, Tucker has cast his argument as resting on the district court's lack of subject matter jurisdiction over the probation revocation in mid-2022. If the district court lacked subject matter jurisdiction, its decision to sanction Tucker and to extend his probation would be void. See *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016); *In re Estate of Heiman*, 44 Kan. App. 2d 764, 766, 241 P.3d 161 (2010). An appellate court may question subject matter jurisdiction at any time, so the issue is plainly before us. *State v. Delacruz*, 307 Kan. 523, 529, 411 P.3d 1207 (2018). Ordinarily, the presence or absence of subject matter jurisdiction presents a question of law. 307 Kan. at 529.

Tucker relies on K.S.A. 2022 Supp. 22-3716, the statute governing probation revocations, to fashion his jurisdictional claim. He points out that the district court may issue either warrants for the arrest of probationers or notices that they appear "to answer to a charge" of violating any condition of their probations. K.S.A. 2022 Supp. 22-3716(a). But the district court must do so no more than 30 days after "the date probation . . . was to end." K.S.A. 2022 Supp. 22-3716(e). Tucker contends that when the district court withdrew the original arrest warrant in March 2020, it lost subject matter jurisdiction over his probation because the 24-month term had run without any further order either revoking or extending the probation. In turn, the later notice to appear and the much later arrest warrant had no legal effect because they were issued more than 30 days after the probation expired.

The argument, however, fails because it misperceives the source of the district court's subject matter jurisdiction and understates the scope of that jurisdiction. Subject matter jurisdiction is the authority of a court to hear a particular type of case or legal dispute. *Dunn*, 304 Kan. at 784. District courts have subject matter jurisdiction over criminal matters by grant of the Kansas Constitution and concomitant enabling legislation. See 304 Kan. at 811 (Kansas Constitution "confer[s]" subject matter jurisdiction on "state courts to adjudicate criminal cases"). The *Dunn* court cited Article 3, section 1 and section 6(b) of the Kansas Constitution as the fountainhead of the district court's subject matter jurisdiction. See 304 Kan. at 789. In turn, K.S.A. 20-301 affords district courts "general original jurisdiction of all matters, both civil and criminal."

Accordingly, and contrary to Tucker's argument, the district court had the broad judicial authority—subject-matter jurisdiction—to hear probation revocation proceedings in the summer of 2022. Probation, as a way of satisfying a sentence in a criminal case, obviously comes within the jurisdictional grant in K.S.A. 20-301 and the related constitutional provisions governing the courts. On that basis, Tucker's challenge fails.

The district court's handling of the arrest warrants and the notice to appear bear on its authority over the person of Tucker in this particular proceeding rather than its subject matter jurisdiction to hear probation revocations generally. That is, the warrants and the notice were devices through which the district court exercised control or dominion over Tucker to initiate the proceedings and to require his appearance. See *State v. Jordan*, 317 Kan. ___, 2023 WL 6933633, at *10 (2023) (The Kansas Constitution confers subject matter jurisdiction in criminal cases generally; a complaint, information, or indictment provides the means for "invok[ing]" that jurisdiction to bring a named defendant before the district court for prosecution in a particular case.); *Dunn*, 304 Kan. at 812; see also *State v. Sokolaski*, 26 Kan. App. 2d 333, 334, 987 P.2d 1130 (1999) (district court has "jurisdiction over defendant[]" in criminal prosecution for failing to pay child support if child resides in Kansas).

4

Whether the district court ceased to have that sort of personal jurisdiction over Tucker when it withdrew the original warrant in March 2020 presents a legal question distinct from the challenge to subject matter jurisdiction he has raised in this appeal. See *State v. Lehman*, 308 Kan. 1089, 1098-99, 427 P.3d 840 (2018) (pending motion of State to correct illegal sentence ineffective to permit district court to modify defendant's sentence after sentence has been served; upon completing sentence, defendant "no longer" under jurisdiction of "criminal justice system"). So we need not (and do not) answer that question.

Tucker fares better with his due process argument. Kansas appellate courts have consistently recognized that the State may waive the right to pursue alleged probation violations if it fails to make reasonable efforts to bring the probationer before the district court within a reasonable time. *State v. Hall*, 287 Kan. 139, 144, 195 P.3d 220 (2008); *State v. Myers*, 39 Kan. App. 2d 250, 253, 178 P.3d 74 (2008); *State v. Haines*, 30 Kan. App. 2d 110, 112-13, 39 P.3d 95 (2002). The *Hall* court stated the fundamental rule this way: "[T]he issuance of an arrest warrant does not extend a court's jurisdiction over a probationer indefinitely, and due process demands that the State act without unreasonable delay in the issuance and execution of an arrest warrant." 287 Kan. at 144. The State's failure to act with dispatch has been characterized as a waiver of the right to act at all on the alleged violation and is considered a denial of due process under the Fourteenth Amendment to the United States Constitution. 287 Kan. at 142-43, 145; *State v. Curtis*, 42 Kan. App. 2d 132, Syl. ¶ 2, 209 P.3d 753 (2009); *Myers*, 39 Kan. App. 2d at 253. A waiver may be inferred from the circumstances of a given case by looking at the length of delay, the lack of effort to locate the probationer, and other factors. If there has been a waiver, the probationer need not establish demonstrable prejudice to prevail. *Hall*, 287 Kan. at 145; *Curtis*, 42 Kan. App. 2d at 142.

The due process determination presents a question of law. *Hall*, 287 Kan. at 142-43. But there are no categorical time limits or deadlines that dictate a common result

5

across cases. In short, the outcome in a particular case, though bounded by the legal principles we have outlined, remains highly fact dependent. Here, however, we perceive no dispute about the material facts.

We first consider the period between the issuance of the original arrest warrant in late 2017 and its withdrawal in early 2020. During much or all of that time, Tucker was serving a sentence on other convictions in the Missouri prison system. In *Hall*, the court held that the time Eric Eugene Hall spent in custody serving a sentence in one case should not be counted against the State in seeking to revoke his probation in another case. There, the delay was about six years. The court concluded the State acted with sufficient diligence in pursuing the probation violation and, in reaching that conclusion, seemed to give considerable weight to the State's decision to file a detainer. 287 Kan. 139, Syl. ¶ 1, 153, 156. Here, the State did not do so and apparently took no other steps to secure Tucker's presence to face the probation revocation upon his release in Missouri. Nevertheless, we largely discount that time in our analysis precisely because *Hall* did not establish a firm rule requiring the filing of a detainer or another formal action to avoid a waiver.

But the period after the district court withdrew the original warrant is another matter. The district court issued a notice to appear for Tucker that was quickly returned without service. The record indicates the State did nothing going forward to find Tucker or serve him with the notice. And it did not obtain another arrest warrant for more than two years. Tucker apparently was promptly taken into custody on the new warrant.

The record shows that between March 2020, when the original arrest warrant was withdrawn, and June 2022, when the new warrant was issued, Tucker was twice in custody in the Cherokee County jail. He was held and released on a bench warrant in another case in September 2020 and detained for about three days in January 2021. On neither occasion did authorities serve Tucker with the notice to appear on the probation

6

violation in this case or otherwise inform him of those allegations. That is more than just an irony. It both underscores and typifies the State's lack of diligence and industry in attempting to locate Tucker and apprise him of the alleged probation violation from 2017. Implied waivers rest on precisely that kind of laxity and indifference. The lapse of time from March 2020 to July 2022—more than two years—squares with other cases in which we have found waivers when the State failed to act diligently. See *Myers*, 39 Kan. App. 2d 250 (waiver when 2-year delay coupled with no evidence of any attempts to serve warrant); *State v. Bennett*, 36 Kan. App. 2d 381, 138 P.3d 1284 (2006) (waiver with 2-year delay when State never tried to contact probationer at address listed in warrant); *State v. White*, No. 115,930, 2017 WL 4558231 (Kan. App. 2017) (unpublished decision) (waiver based on 18-month delay and no evidence State attempted to serve probationer after his release from federal custody).

The district court's talismanic invocation of the pandemic does not provide a sufficient legal basis to abrogate Tucker's constitutional due process right. As we have said, the district court did not outline why COVID-19 would alleviate the State's obligation to undertake some reasonable effort to find Tucker when it apparently made none at all. To be sure, constraints of the pandemic might have affected the scheduling and manner of the revocation hearing *after* Tucker had been served with either a notice or a warrant. So Tucker might have gotten a video proceeding rather than an in-person one. But that's a different due process consideration.

We, therefore, conclude the State waived the 2017 probation violation alleged against Tucker and, as a result, violated his due process rights in pursuing the violation in 2022. We have not considered the delay between 2017 and 2020, despite the State's failure to file a detainer, in coming to our conclusion, although it does nothing to detract from our determination. Under these circumstances, the appropriate remedy requires that Tucker be discharged from probation. See *Myers*, 39 Kan. App. 2d at 255. We reverse the

district court's decision extending Tucker's probation and remand with directions that his probation be terminated.

Reversed and remanded with directions to discharge Tucker from probation in this case.