NOT DESIGNATED FOR PUBLICATION

No. 126,801

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PAUL T. MEDLOCK,
*Appellant.*


MEMORANDUM OPINION

Appeal from Douglas District Court; BLAKE GLOVER, judge pro tem. Submitted without oral argument. Opinion filed October 11, 2024. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.


PER CURIAM: Paul T. Medlock was placed on 18 months of probation after driving under the influence (DUI) and aggravated battery convictions but failed substance abuse treatment and absconded. The State sought to revoke his probation, leading to a bench warrant in November 2021. But Medlock was not arrested until over 18 months later. The district court revoked his probation and imposed Medlock's 21-month prison sentence. Medlock now appeals, arguing that the State's delay in arresting him violated his due process rights. Finding no error, we affirm.

*Factual and Procedural Background*

In March 2021, Medlock pleaded no contest to aggravated battery and DUI charges stemming from a June 2019 incident in Lawrence, when he struck a pregnant pedestrian crossing the street with her child. The force knocked the pedestrian unconscious, and she was hospitalized. The district court found Medlock, whose blood alcohol concentration at the time was 0.106, guilty of both offenses.

Before sentencing, Medlock moved for a dispositional departure, seeking probation due to his limited capacity for judgment at the time of his offenses. He also cited several mitigating factors, including acceptance of responsibility, age, and lack of prior violent felonies. The State agreed to support his request under the plea agreement.

The district court followed the plea agreement and granted Medlock's request for a dispositional departure to probation. Consequently, Medlock was sentenced to a presumptive 21-month prison term and a consecutive 12-month jail sentence, which the district court suspended in favor of an 18-month supervised probation term.

In September 2021, Medlock reported to his probation officer, who instructed him to make contact upon his release from rehabilitation. On October 18, Medlock was unsuccessfully discharged from rehabilitation, and he did not contact his probation officer after that. So, on October 26, Medlock's probation officer tried to contact Medlock. He contacted Medlock's Lawrence neighbor, who told him that Medlock had relocated to Topeka, although the neighbor did not have the specific address. The probation officer also tried to contact Medlock at his last known phone number but failed.

The next day, Medlock's probation officer signed an affidavit detailing these alleged probation violations: testing positive for illegal drugs multiple times, being unsuccessfully discharged from substance abuse treatment, and failing to report to his

probation officer as required. Nor did he update his probation officer on his current residence. On October 28, the probation officer discovered that Medlock had stayed with Steve Swagart in Topeka a week earlier, but Swagart had not seen Medlock since then.

The district court issued a bench warrant for Medlock on November 5, 2021. Then, on November 22, a law enforcement officer in Topeka informed Medlock's probation officer that Medlock had been spotted in the area. In response, the probation officer contacted the Douglas County Sheriff's Department and asked for assistance in contacting the Shawnee County Sheriff's Department to help locate Medlock. The probation officer then conducted regular "warrant checks" on Medlock on October 28, 2021, March 22, 2022, July 14, 2022, and February 23, 2023, to make sure the warrants were still active. Medlock was eventually arrested on a bench warrant in Jackson County on May 26, 2023.

After Medlock's arrest, revocation proceedings began in district court. Medlock moved to dismiss, claiming the State had waived its right to revoke his probation due to delays in executing the arrest warrant. The State responded that it had made reasonable yet unsuccessful efforts to locate Medlock and serve the bench warrant issued on November 5, 2021. The district court heard testimony from Medlock's probation officer about his attempts to find Medlock, as well as Medlock's testimony about his whereabouts since the warrant was issued.

Medlock acknowledged some efforts to locate him before the warrant was issued, but he claimed those efforts were irrelevant so the district court should consider only the efforts after the warrant was issued. The district court noted that existing caselaw did not clarify whether it could consider the State's prewarrant efforts to locate a defendant. Nonetheless, it considered those efforts, ruled that the State had made reasonable efforts to track Medlock down both before and after the warrant was issued, and denied Medlock's motion to dismiss.

3

The district court then found Medlock had violated his probation. The State sought to impose the original 31-month sentence, while Medlock's counsel requested a reduced 18-month sentence, citing his age and lack of new charges. The district court revoked Medlock's probation and ordered 21 months of incarceration by modifying the sentences to run concurrent and granted him 336 days of jail credit.

Medlock timely appeals.

*Did the District Court Err in Revoking Medlock's Probation Because It Impliedly Waived Its Right to Prosecute the Revocation?*

Medlock raises only one issue on appeal—whether the State's nearly 19-month delay between the issuance and execution of the warrant impliedly waived the State's right to prosecute Medlock's probation revocation under the Fourteenth Amendment's Due Process Clause. When, as here, the question on appeal is whether the district court complied with due process requirements when revoking probation, appellate courts have unlimited review. *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016).

*Analysis*

A district court generally retains jurisdiction to revoke an individual's probation even after the probationary period has concluded, as long as "the proceedings were instituted during the term of the probation and revocation occurs within a reasonable time thereafter." *State v. Haines*, 30 Kan. App. 2d 110, 112, 39 P.3d 95 (2002). Still, a "failure to act in a timely and reasonable manner may divest the district court of jurisdiction to revoke probation if there is an unreasonable delay, which must be determined on the circumstances of each case." *State v. Curtis*, 42 Kan. App. 2d 132, 136-37, 209 P.3d 754 (2009) (citing *State v. Hall*, 287 Kan. 139, 144-45, 195 P.3d 220 [2008]).

Due process typically requires that the State "act in a timely and reasonable manner" when pursuing the revocation of an individual's probation. *Haines*, 30 Kan. App. 2d at 112. Even so, "delay alone does not constitute a due process violation." *Curtis*, 42 Kan. App. 2d at 140. Instead, Kansas courts must evaluate whether the defendant was prejudiced because of the delay and whether the State has forfeited its right to pursue the probation violation. See 42 Kan. App. 2d at 140.

Medlock does not argue prejudice but argues that the State impliedly waived its ability to revoke his probation because its delay in executing the warrant was unreasonable. But the State invites this court to determine the reasonableness of the delay by assessing what the State did, rather than what it could or should have done.

The determination whether inaction constitutes an unnecessary delay depends on the circumstances of each case. *Hall*, 287 Kan. at 145. When assessing whether the State's actions amount to "unreasonable inaction," courts generally evaluate three factors: (1) the length of the delay, (2) the rationale behind the delay, and (3) whether the probationer has asserted their right to a prompt resolution of the proceedings against them. No one factor is enough to show a violation of due process. Instead, we evaluate the factors collectively, along with any other pertinent circumstances. *Curtis*, 42 Kan. App. 2d at 144.

Medlock relies primarily on the length of the delay, arguing that the over 18-month delay between the warrant's issuance and execution was excessive. But the delay here is significantly shorter than in some cases Medlock cites. See *Haines*, 30 Kan. App. 2d at 111 (16-year delay); *Curtis*, 42 Kan. App. 2d at 144 (21-month delay); and *State v. Myers*, 39 Kan. App. 2d 250, 251, 178 P.3d 74 (2008) (over 2-year delay). And our Supreme Court ruled in *Hall* that a six-year delay was not unreasonable, emphasizing the need to consider the specific circumstances in each case. 287 Kan. at 153.

Medlock's claim of an "unduly long" delay weakens when considered in context with the reason for that delay. The delay here is attributed solely to his voluntary absence after fleeing probation supervision. The State has consistently argued that its efforts to locate Medlock were reasonable, and Medlock seems to concede this point as to the State's efforts in October and November 2021. Medlock compares his situation to *Curtis*, but the two cases differ. In *Curtis*, the State knew the defendant's whereabouts, while here, the State did not know where Medlock was and it struggled to serve him with an arrest warrant due to his absence. Medlock thus likely absconded from probation supervision. See *State v. Dooley*, 308 Kan. 641, Syl. ¶ 4, 423 P.3d 469 (2018) (defining "absconder" as one who seeks to "evade the legal process . . . by hiding within or secretly leaving the jurisdiction").

Although Medlock considers the State's efforts before the warrant was issued to be irrelevant in assessing whether the State acted with reasonable diligence, we do not. Probation revocation proceedings for Medlock were initiated after he failed substance abuse treatment on October 18, 2021, and then cut off all contact with probation supervision. Medlock's probation officer, seeking to locate Medlock, contacted his former neighbor, who mentioned Medlock had moved to Topeka to live with Swagart but had not heard from him in several days. Despite attempts to reach Medlock at the provided phone number and contacting Swagart, Medlock's probation officer failed to make contact.

On October 28, 2021, Medlock's probation officer tried again. He communicated with Eric Shingling, who told him that Medlock had briefly moved in with him but had not been seen since October 21. Medlock's probation officer then requested a criminal history check on Medlock, which revealed no recent law enforcement contact. A bench warrant for Medlock's arrest was issued on November 5 and entered into an NCIC database. The only evidence of Medlock residing in Shawnee County was an address he had provided to the Jackson County Sheriff's Office when he was arrested on May 26,

6

2023. At the July 13, 2023 revocation hearing, Medlock said he had lived at that address for less than two months. Medlock went over 18 months without contacting his probation officer and did not live at his reported address. Because the State's efforts to find him elsewhere were unsuccessful, the State had to rely on Medlock's contact with law enforcement so it could serve the arrest warrant.

And Medlock had little contact with law enforcement. Medlock testified that between the issuance of a warrant on November 5, 2021, and his arrest on May 26, 2023, he had only one limited contact with law enforcement, and it was unrelated to his own conduct. He testified that he called the police to remove a woman from his property after she had broken a window. Still, no record shows that he identified himself to the police, that he spoke to them about the incident, or that officers were dispatched to his location. We do not find these efforts to be unreasonable inaction.

Thus, the length of the delay and the rationale behind the delay weigh in favor of the State. And Medlock does not contend that he asserted his right to a prompt resolution of the proceedings against him.

Under *Curtis*, the State acted with reasonable diligence in pursuing Medlock's probation revocation. See 42 Kan. App. 2d at 143. The key focus is on the State's actions, not the lapses. Judge Malone's concurrence in *Myers* highlights the need for courts to send a clear message to probation violators; allowing a waiver in this scenario would undermine the justice system's integrity and responsibilities. 39 Kan. App. 2d at 257 (Malone, J., concurring) (cautioning against courts "sending the wrong message to violators if they are allowed to believe that all they need to do to be released from probation is move out of state and avoid being arrested for 2 years"). Medlock's plea for the State to have "tried harder" disregards his culpability.

The district court thus correctly determined that the State did not impliedly waive its right to seek the revocation of Medlock's probation, nor did it err in its decision to revoke it.

Affirmed.